**2023-1997**

---

# United States Court of Appeals for the Federal Circuit

---

**AMP PLUS, INC.,**
*Appellant*

**v.**

**DMF, INC.,**
*Appellee*

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-01094

---

**BRIEF OF APPELLANT AMP PLUS, INC.**

Guy Ruttenberg
Bruce D. Kuyper
Ruttenberg IP Law,
A Professional Corporation
1801 Century Park East
Suite 1920
Los Angeles, CA 90067
(310) 627-2270
guy@ruttenbergiplaw.com
bruce@ruttenbergiplaw.com
*Attorneys for Appellant*

October 2, 2023

## THE LANGUAGE OF THE CLAIM AT ISSUE

U.S. Patent No. 9,964,266:

22. A compact recessed lighting system, comprising:

a light source module for emitting light;

a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;

a unified casting with a closed rear face, a sidewall and an open front face wherein the sidewall is joined to the closed rear face at one end and defines the open front face of the unified casting at another end, wherein the sidewall extends 360 degrees around a center axis of the unified casting to define a cavity that extends forward from the closed rear face to the open front face of the unified casting and outward to the sidewall, wherein the light source module and the driver are positioned inside the cavity of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting; and

a reflector positioned inside the cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,

wherein:

the light source module is a light emitting diode (LED) module;

the sidewall of the unified casting has fins formed on its outside surface; and

the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary [sic] keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary [sic]

keyed or interlocking connectors, *wherein the second connector is coupled to electricity from an electrical system of a building* in which the compact recessed lighting system is installed.

associating the user-defined information received from the first originating party and at least a first portion of a first image in a database, wherein the user-defined information augments first user-defined information already associated at the server with at least the first portion of the first image in the database; and

providing access by a second party to the user-defined information and the first user-defined information, when a second image, captured by the second party, includes a portion corresponding to at least the first portion of the first image.

(emphasis on disputed limitation)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1997

**Short Case Caption** AMP Plus, Inc. v. DMF, Inc.

**Filing Party/Entity** AMP Plus, Inc. d/b/a ELCO Lighting

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/02/2023

Signature: /s/ Guy Ruttenberg

Name: Guy Ruttenberg

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| AMP Plus, Inc. d/b/a ELCO Lighting | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Buchalter, a Professional Corporation | Kari L. Barnes | Daniel A. Crowe |
| J. Rick Taché | Bryan Cave Leighton Paisner LLP | Erin A. Kelly |
| Roger L. Scott | Robert E. Boone | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## NOTICE OF RELATED CASE INFORMATION

**Case Number** 2023-1997

**Short Case Caption** AMP Plus, Inc. v. DMF, Inc.

**Filing Party/Entity** AMP Plus, Inc. d/b/a ELCO Lighting

**Instructions:** Do not duplicate information. The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. *See* Fed. Cir. R. 47.5(b). Attach additional pages as needed. This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case. Fed. Cir. R. 47.5(b)(1).

DMF, Inc v. AMP Plus, Inc., No. 2:18-cv-07090-CAS-GJS (U.S.D.C., C.D. Cal.)
AMP Plus, Inc. v. DMF, Inc., Nos. 2021-1595, 2021-1636 (Nov. 10, 2022 opinion by Bryson, C.J.).

☐ Additional pages attached

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

In addition to the parties to this appeal:
ELCO Lighting, Inc.

☐ Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

In addition to those listed on the concurrently filed Certificate of Interest (Sec. 4):
Cislo & Thomas LLP; Kelly W. Cunningham; Chong Wook Pak
Law Offices Nico N. Tabibi, APC; Nico Tabibi
Davidson Law Group, a Law Corporation; Ben M. Davidson
Ergoniq LLC; David W. Long; Robert A. Gutkin
Gallagher & Kennedy PA; Kevin D. Neal

☐ Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/02/2023

Signature: /s/ Guy Ruttenberg

Name: Guy Ruttenberg

# TABLE OF CONTENTS

**Page**

THE LANGUAGE OF THE CLAIM AT ISSUE .................................................. i

CERTIFICATE OF INTEREST .................................................. iii

NOTICE OF RELATED CASE INFORMATION .................................................. vi

TABLE OF AUTHORITIES .................................................. x

STATEMENT OF RELATED CASES .................................................. xii

JURISDICTIONAL STATEMENT .................................................. 1

INTRODUCTION .................................................. 1

ISSUE PRESENTED .................................................. 3

STATEMENT OF THE CASE .................................................. 3

I. The ’266 Patent .................................................. 3

II. ELCO’s IPR Petition and Grounds of Unpatentability at Issue .................................................. 4

III. The Board’s First Final Written Decision .................................................. 7

IV. Prior Cross-Appeals to This Court .................................................. 7

V. The Board’s Final Written Decision on Remand .................................................. 9

SUMMARY OF THE ARGUMENT .................................................. 10

STANDARD OF REVIEW .................................................. 12

ARGUMENT .................................................. 13

I. Claim 22 Is Unpatentable Based on This Court’s Prior Ruling Affirming That the Only Basis for Patentability Is the “Plurality of Elements” Limitation. .................................................. 13

II. ELCO Demonstrated That Claim 22 Is Obvious in Light of Imtra 2011 and Imtra 2007. ....................15

A. ELCO Demonstrated That Claim 22 Is Unpatentable as Obvious by the Combination of Imtra 2011 and Imtra 2007 (Petition Unpatentability Ground 2). ....................15

B. Connecting a Prior Art Device to a Specific Electrical System, Such as a Building's, Is Obvious. ....................18

CONCLUSION ....................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS...22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AMP Plus, Inc. v. DMF, Inc.*,
No. IPR2019-01094, 2020 WL 6811241
(P.T.A.B. Nov. 19, 2020) ("*AMP Plus I*") .................... 1, 7, 8, 10, 13, 14, 19

*AMP Plus, Inc. v. DMF, Inc.*,
Nos. 2021-1595, 2021-1636, 2022 WL 16844516
(Fed. Cir. Nov. 10, 2022) ("*AMP Plus II*") ................. 1, 2, 3, 4, 8, 10, 13, 14

*Central Soya Co. v. Geo. A. Hormel & Co.*,
723 F.2d 1573 (Fed. Cir. 1983) ........................................................... 13, 14

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ..................................................................12

*Gardner v. TEC Sys., Inc.*,
725 F.2d 1338 (Fed. Cir.),
*cert. denied*, 469 U.S. 830 (1984)................................................................20

*In re Dailey*,
357 F.2d 669 (C.C.P.A. 1966) .....................................................................20

*In re Lindberg*,
194 F.2d 732 (C.C.P.A 1952).......................................................................20

*In re McDaniel*,
293 F.3d 1379 (Fed. Cir. 2002) ..................................................................14

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007).....................................................................................18

*Perkin-Elmer Corp. v. Computervision Corp.*,
732 F.2d 888 (Fed. Cir. 1984) ............................................................ 13, 14

*Redline Detection, LLC v. Star Envirotech, Inc.*,
811 F.3d 435 (Fed. Cir. 2015) .....................................................................12

## Statutes

28 U.S.C. § 1295(a)(4)(A) ...............................................................................1

35 U.S.C. § 311(a) ..........................................................................................1

**Other Authorities**

Manual of Patent Examining Procedure § 2141 (9th ed., rev. Feb. 2023) .............20

Manual of Patent Examining Procedure § 2144 (9th ed., rev. Feb. 2023) .............20

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5(a), counsel for Appellant AMP Plus, Inc. states:

(1) The following is the only other appeal in or from the same civil action or proceeding in the originating tribunal that was previously before this or any other appellate court:

(A) Title and Number: *AMP Plus, Inc. dba ELCO Lighting v. DMF, Inc.*, Nos. 2021-1595, 2021-1636;

(B) Date of Decision: November 10, 2022;

(C) Composition of the Panel: Before STOLL, BRYSON, and CUNNINGHAM, Circuit Judges;

(D) Citation of the Opinion in the Federal Reporter: None; Westlaw Citation: 2022 WL 16844516.

(2) The title and number of the only case known to counsel to be pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case is *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090-CAS-GJS (C.D. Cal.).

## JURISDICTIONAL STATEMENT

This appeal arises from a final decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office. The Board had jurisdiction under 35 U.S.C. § 311(a). The Board issued a Final Written Decision on Remand on March 27, 2023.

ELCO timely appealed on May 30, 2023. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## INTRODUCTION

Appellant AMP Plus, Inc. d/b/a ELCO Lighting ("ELCO") appeals the Board's Final Written Determination on Remand finding that claim 22 is not unpatentable.

In reviewing the Board's first Final Determination, this Court observed that the Board had found that the Imtra 2011 prior art reference "disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation." *AMP Plus, Inc. v. DMF, Inc.*, Nos. 2021-1595, 2021-1636, 2022 WL 16844516, at *2 (Fed. Cir. Nov. 10, 2022) ("*AMP Plus II*") (citing *AMP Plus, Inc. v. DMF, Inc.*, No. IPR2019-01094, 2020 WL 6811241, at *17 (P.T.A.B. Nov. 19, 2020) ("*AMP Plus I*")). This Court affirmed the Board's finding that claim 17 (which does not recite the "plurality of elements" limitation) is anticipated by Imtra 2011. *Id.* at *7. This Court also affirmed the Board's finding that other

challenged claims having the "plurality of elements" limitation were not unpatentable based on the asserted grounds. *Id.*

But the Court noted that claim 22 (like claim 17) also lacks the "plurality of elements" limitation, and it appeared to this Court "that the Board may have simply overlooked" claim 22. *Id.* at *3. Therefore, this Court remanded as to claim 22.

On remand, the Board once again held that claim 22 is not unpatentable. The Board's second determination remains erroneous. In its second decision, the Board on remand relied on a different limitation, the only one not recited in claim 17, that recites "coupl[ing] to electricity from an electrical system of a building in which the compact recessed lighting system is installed." The Board held that ELCO had not provided evidence of that limitation in the prior art.

The Board's second decision remains erroneous and unsupported by the record. First, the Board's second decision is inconsistent with its prior determination—affirmed by this Court—that the prior art "disclose[s] all limitations of the challenged claims except for the 'plurality of elements' limitation." Second, on the merits, not only did ELCO establish a *prima face* case through expert opinion as to the "building" limitation, but the patent owner (DMF)'s own expert even ***agreed*** that the cited reference discloses this "electricity from an electrical system of a building." To be sure, DMF never argued otherwise.

ELCO respectfully requests that this Court reverse.

## ISSUE PRESENTED

1. Whether the Board erred in finding claim 22 of U.S. Patent No. 9,964,266 not unpatentable over the Imtra 2011 reference.

## STATEMENT OF THE CASE

The factual and procedural background through the prior (first) appeal in the below inter partes review ("IPR") proceeding are set forth in this Court's opinion in *AMP Plus II* 2022 WL 16844516, at *1-*3. That background includes a discussion of the patent at issue, U.S. Patent No. 9,964,266 ("the '266 patent"), which is owned by appellee DMF, Inc., and its claims 17 and 22.

In its earlier opinion, this Court affirmed the Board's determination that claim 17 is unpatentable (and that certain other claims are not unpatentable) based on the asserted grounds, but the Court remanded for the Board to address the patentability of claim 22. *Id.* at *3.

### I. The '266 Patent

Because this Court's prior opinion describes the '266 patent and relevant claims, Appellant quotes here only a portion of that description for brief, independent context:

> The '266 patent is generally directed to a "compact recessed lighting system" that can be installed in a standard electrical junction box. '266 patent, Abstract. The '266 patent discloses a "unified casting" that houses a light source and a "driver" that powers the light source.

> *Id.* at col. 2 ll. 7–10, col. 3, ll. 25–46. The casting, driver, and light source are all sized so that they can fit within a junction box. *See id.* at col. 2, line 65 through col. 3, line 11.

*AMP Plus II*, 2022 WL 16844516, at *1.

Most of the challenged claims recite a compact recessed lighting system with a unified casting that includes "*a plurality of elements positioned proximate to the open front face so as to align with corresponding tabs of a standard junction box*." Claims 17 and 22 do not recite the "plurality of elements" limitation.

As noted above, claim 22 (unlike claim 17) recites that the recessed lighting system also "further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary [sic] keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary [sic] keyed or interlocking connectors, *wherein the second connector is coupled to electricity from an electrical system of a building* in which the compact recessed lighting system is installed." The Board's second determination relies on the quoted language in this limitation.

## II. ELCO's IPR Petition and Grounds of Unpatentability at Issue

On May 17, 2019, ELCO petition the Board for an IPR. Two of the references that ELCO cited in its IPR petition are "Imtra 2011" and "Imtra 2007." They are catalogs that were published by Imtra Corporation detailing various

lighting fixtures that Imtra sold. Appx391-403 (Imtra 2011); Appx431-438 (Imtra 2007).

ELCO raised three grounds of unpatentability in its petition involving the two Imtra references together or alone: anticipation by Imtra 2011 ("Ground 1"); and obviousness in view of the combination of Imtra 2011 and Imtra 2007 ("Ground 2"). The Board instituted trial on these two grounds, along with another ground not at issue in this appeal. Appx4190, Appx4194-4195.

ELCO's petition was accompanied by the declaration of ELCO's expert, Dr. Eric Bretschneider. Dr. Bretschneider's declaration described how each limitation of the challenged claims (labeled in the petition and Dr. Bretschnedier's declaration as Limitations A through M) was disclosed in the Imtra references.

Regarding claim 22's limitation of "coupled to electricity from an electrical system of a building" ("Limitation M"), ELCO's petition and Dr. Bretschneider's declaration explain how Imtra 2011 discloses a fixture with a "cable tail for direct hook up to an AC J-box" and that "Imtra 2011 teaches fixtures powered by 120VAC," which is voltage commonly used in a building. Appx124-125; Appx244.

Dr. Bretschneider also opined that "a POSITA would search for product literature on low profile marine lighting before initiating a design project for low profile lighting intended for buildings or structures and would therefore have found

the Imtra product catalogs." Appx217-218 (Bretschneider Decl. ¶ 103). He also cited his own experience in sourcing components from "a local marina supply store." Appx219 (Bretschneider Decl. ¶ 107). DMF never disputed this.

On the contrary, DMF acknowledged that Dr. Bretschneider offered such an opinion. In questioning Dr. Bretschneider, DMF's counsel asked him, "When ***you gave your opinion that Imtra could be used in a building***, did you give all those different considerations you would have to do in order to know whether or not you could do that?" Appx6019 (Bretschneider 12/20/19 Depo. at 302) (emphasis added). In response to another question, Dr. Bretschneider added, "I've told you repeatedly now the Imtra device could be used in a building." Appx6020 (Bretschneider 12/20/19 Depo. at 303:11-12). He further added a person of ordinary skill in the art would be able to install the Imtra device in a building. Appx6030-6031 (Bretschneider 12/20/19 Depo. at 313:6-314:13). DMF's expert Mr. Benya also ***agreed*** that products disclosed in Imtra 2011 connect to 120-volt AC power, and he opined that a 120-volt alternating current system is "building mains power." Appx6556 (Benya Decl. ¶ 258); Appx7762 (Benya 7/7/20 Depo. at 63:19-21 ("120 voltage, 220, 240,·277 are all voltages that are -- can be used in building mains.")); Appx7801 (Benya 7/7/20 Depo. at 102:22-23 ("'Building mains' is a phrase we use. It also means the electrical system of the building.")); Appx7806 (Benya 7/7/20 Depo. at 107:10-13 ("You·walk in any building today it

will have a power distribution system that's 120 volts AC and may have·a second one that's 277 AC.")).

Further, Dr. Bretschneider also explained that an "electrical system of a building" can encompass buildings operating on DC. Appx216 (Bretschneider Decl. ¶ 99 ("Although most building electrical mains are AC systems, DC mains are also known.")). Here, too, DMF's expert (Mr. Benya) agreed:

> Q. Do you agree that an electrical system of a building can be DC?
>
> A. I have worked on one such building in my career.

Appx7773 (Benya 7/7/20 Depo. at 74:10-13). DMF's expert further remarked, "both I and Dr. Bretschneider identified that there is a potentially emergent trend to use DC power systems" in buildings. *Id.* at 74:21-23.

## III. The Board's First Final Written Decision

In its first Final Written Decision, the Patent Trial and Appeal Board determined that a number of the challenged claims of the '266 patent were not unpatentable, but that claim 17 was unpatentable. *AMP Plus I*, 2020 WL 6811241, at *17.

## IV. Prior Cross-Appeals to This Court

Both parties appealed the Board's decision to this Court. This Court affirmed the Board's determination that claim 17 is unpatentable and that the other challenged claims, except claim 22, were not shown to be unpatentable. *AMP Plus*

*II*, 2022 WL 16844516, at *4, *7. The Court also affirmed the Board's claim construction, including with respect to the construction of "driver." *Id.* at *7.

But this Court vacated the Board's determination that claim 22 was not shown to be unpatentable and remanded for the Board to address the patentability of claim 22 "[i]n light of the Board's silence regarding the obviousness issue as applied to claim 22 . . . ." *Id.* at *3, *7. Despite the Board's silence as to claim 22's obviousness, this Court observed that the Board had nevertheless "referred to claim 22 in its claim construction analysis, where the Board explained that claim 22 is limited to lighting systems that are used in buildings." *Id.* at *3 (citing *AMP Plus I*, 2020 WL 6811241, at *6 n.8, *8–9, *11.). This Court's opinion quoted claim 22, emphasizing the "disputed limitation": "*wherein the second connector is coupled to electricity from an electrical system of a building.*" *Id.* at *2 (emphasis original).

In affirming the Board's prior decision as to claim 17 and all other challenged claims except claim 22, this Court affirmed the Board's determination that "Imtra 2011 disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation." *Id.* at *3, *7. (citing *AMP Plus I*, 2020 WL 6811241, at *17).

## V. The Board's Final Written Decision on Remand

On remand, the Board entered a Final Written Decision on Remand discussing claim 22. Appx1-11. The Board acknowledged this Court's affirmance of the Board's prior determination that claim 17 was unpatentable. Appx2.

Inconsistently from its prior decision finding (as this Court observed) that Imtra 2011 discloses all-but the "plurality of elements" limitation, on remand the Board focused on a different limitation in claim 22. That limitation is referred to in ELCO's petition as Limitation M. It is the only differentiating limitation between claim 22 and claim 17:

> the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary [sic] keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary [sic] keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed.

Appx89 (quoting Appx167 at 11:35-43); Appx124 (same). When analyzing this limitation, the Board focused on the same portion of the limitation that this Court had considered: "*an electrical system of a building.*" Appx6 (emphasis original).

The Board did not specifically find that this element is missing from the Imtra 2011 reference. Instead, the Board pointed out that ELCO has "fail[ed] to direct us to evidence sufficient to establish a person of ordinary skill in the art

could have and would have installed the marine recessed lighting system disclosed in Imtra 2011 in a building." Appx9.

In its decision on remand, the Board did not address this Court's prior statement noting that "the Board found that Imtra 2011 disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation." *AMP Plus II*, 2022 WL 16844516, at *2 (citing *AMP Plus I*, 2020 WL 6811241, at *17). The Board also did not alert the parties that it disagrees with that statement.

ELCO now appeals the Board's determination on remand. As noted below, it provided the Board with substantial evidence that Imtra 2011 discloses Limitation M, and therefore all of the limitations of claim 22.

## SUMMARY OF THE ARGUMENT

The Board's determination on remand is inconsistent with its prior determination—affirmed by this Court—that the prior art (Imtra 2011) "disclose[s] all limitations of the challenged claims except for the 'plurality of elements' limitation." The Board previously determined that claim 17 was unpatentable, and this Court affirmed, because claim 17 does not recite that "plurality of elements" limitation. That determination is law of the case.

Like claim 17, claim 22 does not recite the "plurality of elements" limitation. Following the prior, affirmed determination of this Court, all of its limitations are disclosed in the prior art. Claim 22 is therefore unpatentable. The

Board disregarded that law of the case in determining on remand that claim 22 is not unpatentable.

More fundamentally, the Board did not address this Court's characterization of the Board's prior decision. To be sure, the Board did not alert the parties that it disagrees with that view.

On the merits, the Board's finding is also contrary to and unsupported by the record. On remand, the Board relied on a different limitation, the only one not recited in claim 17. That limitation (Limitation M) recites "coupl[ing] to electricity from an electrical system of a building in which the compact recessed lighting system is installed." The Board found that ELCO had not provided evidence of that limitation in the prior art.

That finding is unsupported by the record. ELCO's petition, supported by its expert (Dr. Bretschneider), demonstrates that the Imtra 2011 reference discloses 120-volt systems, which is a voltage commonly used in an electrical system of a building. In fact, DMF did not dispute that showing, and its expert, Mr. Benya, ***agreed*** that 120-volt systems (which are expressly disclosed in the Imtra 2011 reference) are the electricity of a building. Dr. Bretschneider also explained (and DMF's expert Mr. Benya agreed) that the electrical system of a building can include DC systems. In either event, Dr. Bretschneider explained that the Imtra 2011 systems could be installed in a building.

The contested limitation does not require anything more than "coupl[ing] to electricity of a building." DMF did not propose any construction for this term, nor did the Board adopt one. It is not limited to any particular application within a building. Nor does it require any particular type of electrical system within a building. Instead, as the Board observed, claim 22 simply limits "the recessed lighting system to one placed or installed in a building." Appx8.

That showing demonstrates that Limitation M is disclosed in Imtra 2011. Claim 22 is therefore unpatentable.

The Board's determination should be reversed.

## STANDARD OF REVIEW

This Court "review[s] the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1372 (Fed. Cir. 2019). (quoting *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015)). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).

# ARGUMENT

## I. Claim 22 Is Unpatentable Based on This Court's Prior Ruling Affirming That the Only Basis for Patentability Is the "Plurality of Elements" Limitation.

This Court's prior ruling is binding on the parties under the law of the case doctrine. *See Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984) (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed. Cir. 1983)).

The Board and this Court held claim 17 unpatentable as anticipated because it does not recite the "plurality of elements" limitation. *AMP Plus II*, 2022 WL 16844516, at *7; *AMP Plus I*, 2020 WL 6811241, at *17. The prior art therefore discloses all of its limitations. *Id.*

Like claim 17, claim 22 also does not recite the "plurality of elements." Claim 22 therefore is unpatentable as anticipated for the same reason as claim 17. It is law of the case that Imtra 2011 discloses all limitations of the challenged claims that do not recite the "plurality of elements" limitation. Those claims include claim 22. Claim 22 is therefore unpatentable as anticipated by Imtra 2011 because it does not recite the "plurality of elements" limitation.

This Court could review its earlier decision and change it only if one of three "exceptional circumstances" exist, none of which is present here. *Perkin-Elmer*,

732 F.2d at 900 (citing *Central Soya*, 723 F.2d at 1580). Those "exceptional circumstances" are: "(1) the evidence on subsequent trial was substantially different; (2) controlling authority has intervened; or (3) the earlier decision was clearly erroneous and would work a manifest injustice." *Id.* None is present in this case. Accordingly, it is law of the case that the prior art (Imtra 2011) "disclose[s] all limitations of the challenged claims except for the 'plurality of elements' limitation."

To be sure, the Board did not address this Court's prior statement, and it provided no notice to the parties that it disagrees with this Court's statement.[1]

[1] ELCO's failure to challenge claim 22 as anticipated (Ground 1) is of no import. ELCO challenged claim 22 (and 17) under Grounds 2 and 3 as obvious over prior art combinations that each include Imtra 2011. For the same reasons that claim 22 is anticipated by Imtra 2011, it would have been obvious over the combined references with Imtra 2011 in at least Ground 2, as the Board found with claim 17. *AMP Plus I*, 2020 WL 6811241, at *19; *see In re McDaniel*, 293 F.3d 1379, 1385 (Fed. Cir. 2002) ("[A]nticipation is the epitome of obviousness."). Indeed, the Board's first Final Decision found that claim 17 was both anticipated and rendered obvious by the Imtra 2011 reference. *See AMP Plus II*, 2022 WL 16844516, at *3 (noting that "the Board held that claim 17 was obvious for the same reasons that it was anticipated").

## II. ELCO Demonstrated That Claim 22 Is Obvious in Light of Imtra 2011 and Imtra 2007.

### A. ELCO Demonstrated That Claim 22 Is Unpatentable as Obvious by the Combination of Imtra 2011 and Imtra 2007 (Petition Unpatentability Ground 2).

The only differentiating limitation between claim 22 and claim 17 is what ELCO referred to in its petition as Limitation M:

> the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary [sic] keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary [sic] keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed.

Appx89 (quoting Appx167 at 11:25-43); Appx124 (same).

ELCO showed that all elements of Limitation M, including the limitation of "an electrical system of a building" are disclosed. In its petition, ELCO explained that Imtra 2011 disclosed LED lighting units "equipped with an 18 awg Triplex cable tail for direct hook-up to an AC [Junction]-box." Appx124-125 (citing Appx396). ELCO cited Dr. Bretschneider's declaration, where he explained: "Imtra teaches fixtures powered by 120VAC. Imtra also teaches inclusion of an 18awg triplex cable tail for direct hook-up to an AC junction box." Appx244-245 (Bretschneider Decl. ¶ 158). Dr. Bretschneider further explained, "[a] POSITA

would know that wire connections between the fixture and the power source could be made in a variety of ways including a keyed output connector . . .” Appx244 (Bretschneider Decl. ¶ 159). Page 7 of Imtra 2011 highlights that the disclosed fixtures are “120VAC LED DOWNLIGHTS.” Appx397. On the same page, it adds, “Imtra’s groundbreaking 120VAC LED downlights connect directly to your 120VAC power supply, providing better light with less power and no radiated heat!” *Id.* Likewise, DMF (and its expert) explained that “building main voltage” is “120VAC or 277 VAC.” Appx1126 (Benya Decl. ¶ 13).

Before the Board, DMF did not contest the sufficiency of ELCO’s evidence that the Imtra 2011 reference disclosed the Limitation M and that a POSITA would be motivated to combine that claim element as claimed. *See* Appx5722-5727. This is likely because its own expert, Mr. Benya, ***agrees*** that the Sardinia and Cyprus products disclosed in Imtra 2011 connect to 120-volt AC power. Appx6321 (Benya Decl. ¶ 258 (“the Triplex cable tail provides a length of cable that can be extended from the Sardinia/Cyprus product at one end . . . to be connected at the other end to an AC power line within the junction box (such as by twist caps).”)).

To Mr. Benya, the “electrical system of a building” includes 120-volt power. Mr. Benya explained that “building mains” is synonymous with the term “electrical system of a building” used in Limitation M. Appx7801 (“‘Building mains’ is a phrase we use. It also means the electrical system of a building.”). Mr.

Benya also explained that a 120-volt alternating current system is "building mains power." Appx7762 (identifying 120-volt AC power as "building mains power); Appx7806 ("You walk in any building today it will have a power distribution system that's 120-volts AC . . . ."). Nowhere does Mr. Benya differentiate 120-volt "building mains" power from 120-volt systems used in other contexts.

Mr. Benya is not the only person to recognize the equivalence between 120-volt power and "building" power. In a declaration DMF obtained from Imtra's Director of Project Management, Colby Chevalier, Mr. Chevalier explained that Imtra specifically designed the Sardinia and Cyprus models (discussed in the Imtra 2011 brochure) to connect to a junction box with 120-volt AC "line voltage," which he describes as "line voltage that would be used in building." Appx396-397; Appx1928-1929.

Accordingly, there was no serious dispute that the disclosure of a 120-volt system meets the claim limitation of the "electrical system of a building" as that language is used in Limitation M. The Imtra 2011 reference expressly discloses both a compact LED lighting system meeting all other limitations of Claim 22, and 120-volt LED lighting systems that connects to 120-volt power (*i.e.*, the "electrical system of a building") through wires that a POSITA would understand could be mated with keyed connectors. Appx244. A skilled artisan would understand that power would need to be converted from the 120-volt system to match the power

requirement of the LED fixture. *Id*. Thus, all elements of Claim 22, including Limitation M are disclosed in the prior art, and the claimed combination would be obvious to a skilled artisan.

Thus, ELCO demonstrated by a preponderance of the evidence that Claim 22 is unpatentable as obvious by the combination of Imtra 2011 and Imtra 2007, because it is shown in Imtra 2011 on its own.

The Board's contrary finding is not supported by substantial evidence. The Board's assertion that ELCO "fail[ed] to direct [the Board] to evidence sufficient to establish a person of ordinary skill in the art could have and would have installed the marine recessed lighting system disclosed in Imtra 2011 in a building . . ." is incorrect. As shown above, ELCO provided the Board with sufficient evidence that Imtra 2011 discloses installing the lighting system in a building.

### B. Connecting a Prior Art Device to a Specific Electrical System, Such as a Building's, Is Obvious.

The Board found patentability of claim 22 solely in the limitation "an electrical system of a building." But such a limitation is obvious using common sense, as instructed by the Supreme Court in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007) ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like

pieces of a puzzle."). Here, it is common sense that lighting systems having 120-volt power can be installed directed to the "electrical system of a building."

As noted above, the contested limitation of claim 22 does not require any particular electrical system or any particular application in building, nor did the Board hold otherwise. Rather, as the Board requires, the limitation simply requires that the recessed lighting system be "placed or installed in a building." Appx8 (quoting *AMP Plus I*, 2020 WL 6811241, at *11).

Dr. Bretschneider explained, and DMF never seriously disputed, that the item described in Imtra 2011 could be "placed or installed in building."[2] As he remarked during his deposition, Dr. Bretschneider added, "I've told you repeatedly now the Imtra device could be used in a building." Appx6020 (Bretschneider 12/20/19 Depo. at 303:11-12). He further added a person of ordinary skill in the art would be able to install the Imtra in a building. Appx6030-6031 (Bretschneider 12/20/19 Depo. at 313:6-314:13). He even explained (and DMF's expert agreed) that electrical systems of a building include a DC system, which means that the Imtra device could simply be plugged into a building. Appx216 (Bretschneider Decl. ¶ 99); Appx7773 (Benya 7/7/20 Depo. at 74:10-23).

---

[2] Imtra products were, in fact, "installed in a building" as early as 2010. *See, e.g.*, *Whaling Museum Chooses Imtra LED Lighting for Popular Exhibit*, https://www.ledsmagazine.com/company-newsfeed/article/16690837/whaling-museum-chooses-imtra-led-lighting-for-popular-exhibit.

Longstanding examples of the use of common sense in finding obviousness in claim limitations like the change of a location from a boat to a building are shown in the PTO's Manual of Patenting Examination Procedure ("MPEP"). MPEP section 2141 states that section 2144 "provides many lines of reasoning to support a determination of obviousness based upon earlier legal precedent that had condoned the use of particular examples of what may be considered common sense or ordinary routine practice (e.g., making integral, changes in shape, making adjustable)." MPEP § 2141 at II (9th ed., rev. Feb. 2023); *see* MPEP § 2144 (9th ed., rev. Feb. 2023); *see, e.g.*, *Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, 1349 (Fed. Cir.), *cert. denied*, 469 U.S. 830 (1984) (changes in dimension not patentably distinct from prior art); *In re Dailey*, 357 F.2d 669, 672-73 (C.C.P.A. 1966) (configuration of a container was nothing more than one of numerous configurations that a skilled artisan would find obvious); *In re Lindberg*, 194 F.2d 732, 735 (C.C.P.A 1952) ("[I]t is not regarded as inventive to merely make an old device portable or movable without producing any new and unexpected result.").

Taking a prior art recessed lighting system and connecting it to a building—which is the Board's sole basis for claim 22's patentability—is not a patentable distinction.

## CONCLUSION

For the foregoing reasons, the Board's determination should be reversed, and the Board should be directed to enter a judgment that claim 22 is unpatentable.

Date: October 2, 2023

Respectfully submitted,

Ruttenberg IP Law,
A Professional Corporation

*/s/ Guy Ruttenberg*
Guy Ruttenberg
Bruce D. Kuyper

*Attorneys for Appellant*
*AMP Plus, Inc.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 4,571 words.

Date: October 2, 2023

*/s/ Guy Ruttenberg*
Guy Ruttenberg

# ADDENDUM

## Table of Contents


| IPR Doc. | Document Name | Page |
|---|---|---|
| Paper 78 | Final Written Decision on Remand | Appx1 |
| Ex. 1001 | U.S. Pat. No. 9,964,266 | Appx154 |

Trials@uspto.gov
571-272-7822

Paper 78
Date: March 27, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

AMP PLUS, INC., dba ELCO LIGHTING,
Petitioner,

v.

DMF, INC.,
Patent Owner.

---

IPR2019-01094
Patent 9,964,266 B2

---

Before CHRISTOPHER L. CRUMBLEY, JEFFREY W. ABRAHAM, and DEBRA L. DENNETT, *Administrative Patent Judges*.

DENNETT, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision on Remand
Determining Claim 22 Not Unpatentable
35 U.S.C. §§ 144, 318

# I. INTRODUCTION

This case returns on remand from the United States Court of Appeals for the Federal Circuit in *AMP Plus, Inc. d/b/a ELCO Lighting v. DMF, Inc.*, No. 2021-1595, 2021-1636, 2022 WL 16844516 (Fed. Cir. Nov. 10, 2022) ("*ELCO/DMF*"), affirming the Board's Final Written Decision holding claim 17 unpatentable and claims 1, 2, 4–11, 13–16, 19, 21, 25, 26, and 28–30 not unpatentable, and vacating and remanding for further proceedings with respect to independent claim 22.

## *A. Procedural History*

ELCO Lighting ("Petitioner") filed a Petition for *inter partes* review of claims 1, 2, 4–11, 13–17, 19, 21, 22, 25, 26, and 28–30 of U.S. Patent No. 9,964,266 B2 (Ex. 1001, the "'266 patent"). Paper 1, ("Pet."). The Board instituted review, conducted a trial, and issued a Final Written Decision, holding claim 17 unpatentable and claims 1, 2, 4–11, 13–16, 19, 21, 22, 25, 26, and 28–30 not unpatentable. *See* Paper 70 ("Final Decision" or "Final Dec."), 55, 57.[1] Petitioner appealed the Final Decision regarding all claims except claim 17, and DMF, Inc., Patent Owner, cross-appealed regarding claim 17. In *ELCO/DMF*, the court "vacate[d] the Board's decision that claim 22 is not unpatentable for obviousness and remand[ed] for further proceedings regarding that claim." *ELCO/DMF*, 2022 WL 16844516, at *3. The court found that, although the Board referred to claim 22 in its claim construction analysis, the Board did not explicitly address claim 22 in its discussion of either obviousness ground raised by Petitioner. *Id.*

---

[1] The court held that the Board was silent regarding the obviousness issue as applied to claim 22. *ELCO/DMF*, 2022 WL 16844516, at *3.

The Board held a conference call with the parties on Jan. 11, 2023. Neither party requested additional briefing or a hearing. We denied Patent Owner's request for permission to file briefing from *ELCO/DMF*, the Federal Circuit appeal, alleging that Petitioner made certain admissions therein regarding the meaning of claim 22.

Claims 1, 2, 4–11, 13–17, 19, 21, 25, 26, and 28–30 are not at issue on remand because the Federal Circuit affirmed our determination that claim 17 was unpatentable and the other claims were not unpatentable. Accordingly, the only claim that remains for our consideration is claim 22. For the reasons discussed below, we conclude, in view of the Federal Circuit's decision and the record previously developed during trial, that Petitioner has not shown by a preponderance of evidence that claim 22 is unpatentable.

*B. The '266 Patent*

The '266 patent describes a compact recessed lighting system comprising a light source module and a driver separately coupled to a unified casting, and a reflector. Ex. 1001, Abstract. According to the '266 patent, recessed lighting systems are typically installed or mounted into an opening in a ceiling or a wall, and consist of a trim, a light source module, a "can" housing, and a driver, with the driver insulated from other portions and components of the lighting system through use of a separate insulating container. *Id.* at 1:27–33. The driver may be coupled to the light source module through the use of wires or other conduits such that the driver powers the light source module to emit light. *Id.* at 1:33–36. The '266 patent purports to provide a lighting system with a more compact and cost-effective design while complying with all building and safety codes/regulations. *Id.* at 2:10–13.

*C. Claim 22*

Independent claim 22 reads as follows:

22. A compact recessed lighting system, comprising:

a light source module for emitting light;

a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;

a unified casting with a closed rear face, a sidewall and an open front face wherein the sidewall is joined to the closed rear face at one end and defines the open front face of the unified casting at another end, wherein the sidewall extends 360 degrees around a center axis of the unified casting to define a cavity that extends forward from the closed rear face to the open front face of the unified casting and outward to the sidewall, wherein the light source module and the driver are positioned inside the cavity of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting; and

a reflector positioned inside the cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,

wherein:

the light source module is a light emitting diode (LED) module;

the sidewall of the unified casting has fins formed on its outside surface; and

the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary [sic] keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary [sic] keyed or interlocking connectors, *wherein the second connector is coupled to*

> *electricity from an electrical system of a building* in which the compact recessed lighting system is installed.

*Id.* at 11:4–2–43 (emphasis added).

*D. Asserted Ground on Remand*

Petitioner asserts that the combination of Imtra 2011[2] and Imtra 2007[3], with or without Gifford[4] would have rendered claim 22 unpatentable as obvious.

## II. ANALYSIS

*A. Claim Construction*

In an *inter partes* review, the Board construes claim terms "in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." 37 C.F.R. § 42.100(b) (2018).

In the Final Decision, we explicitly construed two terms ("standard junction box" and "driver"). Final Dec. 9–27. Nothing in the Federal Circuit's decision indicates that these constructions need be revisited. We, therefore, rely on the constructions set forth in the Final Decision, and add the following.

As the Federal Circuit observed (*ELCO/DMF*, 2022 WL 16844516, at *3), we explained in the Final Decision that claim 22 is limited to lighting

---

[2] Imtra Marine Lighting– Advanced LED Solutions ("Imtra 2011"). Ex. 1005.

[3] Imtra Marine Lighting – Spring 2007 ("Imtra 2007"). Ex. 1006.

[4] U.S. Patent No. 9,366,418 B2 to Gifford, published Apr. 4, 2013 ("Gifford"). Ex. 1007.

systems that are used in buildings (*see AMP Plus, Inc. v. DMF, Inc.*, , 2020 WL 6811241, at *6 n.8, *8–9, *11 (PTAB Nov. 19, 2020)). In addition to the reasoning provided in the Final Written Decision, we note that claim 22 recites that the compact recessed lighting system comprises "a plurality of wires connected to the driver and connected to a first connector . . . coupled to a second connector . . . , wherein the second connector is coupled to electricity from *an electrical system of a building* in which the compact recessed lighting system is installed." Ex. 1001, 11:35–43 (emphasis added).

No other claim terms requires express construction. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

*B. Asserted References*

Petitioner asserts that claim 22 would have been obvious over the combination of Imtra 2011 (Ex. 1005) and Imtra 2007 (Ex. 1006) (Ground 2). Paper 1 ("Pet."), 47–55. Imtra 2011 and Imtra 2007 are brochures on LED and halogen lighting fixtures available for use in a variety of marine applications.

Petitioner also asserts that claim 22 would have been obvious over the combination of Imtra 2011, Imtra 2007, and U.S. Patent No. 9,366,418 B2 to Graham Gifford titled "Method, Apparatus, and System for Connecting a Light Emitting Diode Light Fixture to a Mains Power Conductor" issued on June 14, 2016 ("Gifford") (Ex. 1007) (Ground 3). Pet. 64–68, 70–73.

*C. Ground 2: Obviousness over Imtra 2011 and Imtra 2007*

In challenging the patentability of claim 22 over Imtra 2011 and Imtra 2007, Petitioner relies on arguments made regarding limitations in other

claims that are the same or similar to limitations in claim 22. *See* Pet. 49–53. Petitioner also makes arguments applicable to three limitations present only in claim 22 identified in the Petition as Limitations [K] ("wherein: the light source module is a light emitting diode (LED) module"); [L] ("the sidewall of the unified casting has fins formed on its outside surface"); and [M]:

> the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed.

*Id.* at 54. We need only consider Petitioner's arguments regarding Limitation [M] to resolve Petitioner's contentions regarding the patentability of claim 22. Regarding Limitation [M], Petitioner argues

> Imtra 2011 discloses that the "fixture is equipped with an 18 awg Triplex cable tail for direct hook up to an AC J-box." (Imtra 2011, p. 6) The use of interlocking or key connectors (interlocking connectors) and junction boxes in connection with lighting fixtures were known to a POSITA. A POSITA would know that wire connections between the fixture and the power source can be made in a variety of ways, including a keyed output connector. (Bretschneider, ¶158–159).

*Id.* at 54–55. Petitioner provides no analysis of the portion of Limitation [M] that recites "coupl[ing] to electricity from an electrical system of a building in which the compact recessed lighting system is installed." *See id.* Later, in the Reply, Petitioner argues that "[t]he claims do not ***require*** a stand junction box and most do not ***require*** the recessed lighting system to be installed in a building." Paper 42, 2. As explained below, however, some claims do require installation in building, and claim 22 is one such claim.

In the Final Decision, we did not construe "driver" as limited to a device that receives electrical power from building main power. Paper 70, 26. Although we held that "driver" does not itself require installation of the recessed lighting system in a building, we stated "[w]here desired, the Applicant drafted the claims to limit the recessed lighting system to one placed or installed in a building." *Id.* at 25 (identifying claim 22 as one such claim). Of the challenged claims, claims 10, 16, 22, and 25 (by its dependence from claim 22) specifically require installation in a building.

Given opportunities, Petitioner side-stepped confronting the "installation in a building" issue. Claim 10 recites "a second plurality of wires that emerge from the standard junction box and that are to bring electricity from *an electrical system of a building* in which the recessed lighting system is to be installed." Ex. 1001, 9:28–31 (emphasis added). In challenging claim 10, Petitioner argues "Imtra 2011 discloses the connection between the external power supply source and the driver would include a plurality of wires connected to the driver." Pet. 42. Claim 16 recites "a trim directly coupled to the unified casting, for covering a hole in *a ceiling or wall of a building in which the compact recessed lighting system is placed*." Ex. 1001, 9:65–67 (emphasis added). Petitioner argued that "Imtra 2011 discloses that the lighting devices may be installed in a ceiling of marine applications. . . . Those of ordinary skill in the art understand that decorative trim components are commonly and widely used for recessed lighting applications in buildings to cover a hole in a ceiling or wall." Pet. 45, 60. Petitioner appears to vaguely suggest that the marine recessed lighting systems disclosed in Imtra 2011 could be installed in a building, but such suggestion is unsupported by evidence. The portions of Imtra 2011 and Dr.

Bretschneider's Declaration Petitioner relies on fail to address installation of Imtra 2011's marine lighting system in a building. *See* Ex. 1005, 5, 6, 10; Ex. 1002, ¶¶ 179–82, 193–96.

Petitioner bears the burden of proving unpatentability of the challenged claims, a burden that never shifts to Patent Owner. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Petitioner must establish the facts supporting its challenge by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d).

In view of Petitioner's failure to direct us to evidence sufficient to establish a person of ordinary skill in the art could have and would have installed the marine recessed lighting system disclosed in Imtra 2011 in a building, we find Petitioner fails to show obviousness of claim 22 over the combination of Imtra 2011 and Imtra 2007 by a preponderance of the evidence.

*D. Ground 3: Obviousness over Imtra 2011, Imtra 2007, and Gifford*

Petitioner fails to show that the Imtra references render claim 22 obvious. In the Final Decision we noted that Petitioner challenged several claims, including claim 22, as obvious over the combination of Imtra 2011, Imtra 2007, and Gifford, and determined that Petitioner failed to prove by a preponderance of the evidence that one of ordinary skill in the art would have been motivated to modify the Imtra references in view of Gifford's teaching. *Id.* at 48–49. The Federal Circuit affirmed our determination, which we maintain here. For these reasons, Petitioner fails to show obviousness of claim 22 over the combination of Imtra 2011, Imtra 2007, and Gifford by a preponderance of the evidence.

## III. CONCLUSION

For the foregoing reasons, we conclude that Petitioner has not shown by a preponderance of the evidence that claim 22 is unpatentable as having been obvious over the combination of Imtra 2011 and Imtra 2007, or the combination of Imtra 2011, Imtra 2007, and Gifford.

The following table summarizes this decision in combination with our earlier decision affirmed by the Federal Circuit:

| Claims | 35 U.S.C. § | Reference(s)/ Basis | Claims Shown Unpatentable | Claims Not Shown Unpatentable |
|---|---|---|---|---|
| 1, 2, 4–11, 13, 15–17, 19, 21, 26 | 102(a) | Imtra 2011 | 17 | 1, 2, 4–11, 13, 15, 16, 19, 21, 26 |
| 1, 2, 4–11, 13–17, 19, 21, 22, 26, 28–30 | 103 | Imtra 2011, Imtra 2007 | 17 | 1, 2, 4–11, 13–16, 19, 21, 22, 25, 26, 28–30 |
| 1, 2, 4–11, 13–17, 19, 21, 22, 26, 28–30 | 103 | Imtra 2011, Imtra 2007, Gifford | 17 | 1, 2, 4–11, 13–6, 19, 21, 22, 25, 26, 28–30 |
| **Overall Outcome** | | | **17** | **1, 2, 4–11, 13–16, 19, 21, 22, 25, 26, 28–30** |

## IV. ORDER

Accordingly, the Order of the Board's November 19, 2020 Final Written Decision is hereby supplemented as follows:

ORDERED that claim 22 of U.S. Patent 9,964,266 B2 has *not been proven unpatentable*; and

FURTHER ORDERED that, because this is a final decision, parties to

the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

For PETITIONER:

Robert E. Boone
Daniel A. Crowe
Erin A. Kelly
BRYAN CAVE LEIGHTON PAISNER LLP
reboone@blcplaw.com
dan.crowe@bclplaw.com
erin.kelly@bclplaw.com

For PATENT OWNER:

David W. Long
ERGONIC, LLC
longdw@ergonic.com

Kevin B. Laurence
LAURENCE & PHILLIPS IP LAW
klaurence@lpiplaw.com

Ben M. Davidson
DAVIDSON LAW GROUP, ALC
ben@dlgla.com

US009964266B2

# (12) United States Patent
Danesh

(10) Patent No.: US 9,964,266 B2
(45) Date of Patent: May 8, 2018

(54) **UNIFIED DRIVER AND LIGHT SOURCE ASSEMBLY FOR RECESSED LIGHTING**

(71) Applicant: **Michael D. Danesh**, Beverly Hills, CA (US)

(72) Inventor: **Michael D. Danesh**, Beverly Hills, CA (US)

(73) Assignee: **DMF, Inc.**, Carson, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days. days.

(21) Appl. No.: **14/184,601**

(22) Filed: **Feb. 19, 2014**

(65) **Prior Publication Data**

US 2015/0009676 A1 Jan. 8, 2015

**Related U.S. Application Data**

(60) Provisional application No. 61/843,278, filed on Jul. 5, 2013.

(51) **Int. Cl.**
***F21V 15/00*** (2015.01)
***F21S 8/02*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ................ ***F21S 8/02*** (2013.01); ***H04R 17/00*** (2013.01); ***H04R 23/02*** (2013.01); *H04R 1/24* (2013.01); *H04R 2499/11* (2013.01)

(58) **Field of Classification Search**
CPC .................................... F21S 8/02; H04R 1/24
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,038,784 A 4/1936 Ghadiali
3,422,261 A 1/1969 McGinty
(Continued)

FOREIGN PATENT DOCUMENTS

CA 2815067 11/2013
CN 201259125 Y 6/2009
(Continued)

OTHER PUBLICATIONS

Non-Final Office Action (dated Oct. 16, 2014), U.S. Appl. No. 13/484,901, filed May 31, 2012, First Named Inventor: Michael D. Danesh, 15 pages.
(Continued)

*Primary Examiner* — Tsion Tumebo

(57) **ABSTRACT**

A compact recessed lighting system is provided. The lighting system includes a light source module and a driver separately coupled to a unified casting. The driver is formed in a "donut" shape such that the light source module may be coupled to the casting in the center hole formed by the driver. The lighting system may also include a reflector that surrounds the light source module and shields the driver from exposure to the area surrounding the lighting system. Based on this configuration, the lighting system provides a compact design that allows the combined casting, light source module, driver, and reflector to be installed in a standard junction box instead of a "can" housing structure to reduce the overall cost of the lighting system while still complying with all building and safety codes/regulations. This configuration also allows the lighting system to achieve a UL fire-rating of at least two hours.

**30 Claims, 3 Drawing Sheets**



(51) **Int. Cl.**

| | |
|---|---|
| ***H04R 17/00*** | (2006.01) |
| ***H04R 23/02*** | (2006.01) |
| *H04R 1/24* | (2006.01) |

(58) **Field of Classification Search**
USPC ................................................ 362/296.1, 364
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS


3,460,299 A 8/1969 Wilson
3,650,046 A 3/1972 Skinner
4,088,827 A * 5/1978 Kohaut ........................ 174/483
4,399,497 A 8/1983 Druffel
4,520,435 A 5/1985 Baldwin
4,601,145 A 7/1986 Wilcox
4,723,747 A 2/1988 Karp et al.
4,729,080 A 3/1988 Fremont et al.
4,754,377 A * 6/1988 Wenman .................. F21S 8/02 362/148
4,930,054 A 5/1990 Krebs
5,216,203 A * 6/1993 Gower .................. H02G 3/088 174/152 G
5,250,269 A 10/1993 Langer et al.
5,382,752 A * 1/1995 Reyhan ................. H02G 3/088 174/38
5,465,199 A * 11/1995 Bray ........................ F21S 8/02 362/147
5,544,870 A 8/1996 Kelley et al.
5,562,343 A 10/1996 Chan et al.
5,580,158 A 12/1996 Aubrey et al.
5,588,737 A 12/1996 Kusmer
D381,111 S 7/1997 Lecluze
5,662,413 A 9/1997 Akiyama
D386,277 S 11/1997 Lecluze
D387,466 S 12/1997 Lecluze
5,836,678 A 11/1998 Wright et al.
5,942,726 A * 8/1999 Reiker .................... E04B 9/006 174/58
5,944,412 A 9/1999 Janos et al.
6,082,878 A 7/2000 Doubek et al.
6,105,334 A 8/2000 Monson et al.
6,161,910 A 12/2000 Reisenauer et al.
6,174,076 B1 1/2001 Petrakis et al.
6,267,491 B1 7/2001 Parrigin
6,350,043 B1 2/2002 Gloisten
6,364,511 B1 4/2002 Cohen
6,474,846 B1 11/2002 Kelmelis et al.
6,491,413 B1 * 12/2002 Benesohn ..................... 362/294
6,583,573 B2 6/2003 Bierman
6,585,389 B2 7/2003 Bonazzi
D488,583 S 4/2004 Benghozi
6,719,438 B2 4/2004 Sevack et al.
6,758,578 B1 7/2004 Chou
D509,314 S 9/2005 Rashidi
6,948,829 B2 9/2005 Verdes et al.
6,964,501 B2 11/2005 Ryan
D516,235 S 2/2006 Rashidi
D528,673 S 9/2006 Maxik et al.
D531,740 S 11/2006 Maxik
D532,532 S 11/2006 Maxik
7,186,008 B2 3/2007 Patti
7,190,126 B1 3/2007 Paton
D547,889 S 7/2007 Huang
D553,267 S 10/2007 Yuen
7,320,536 B2 * 1/2008 Petrakis .................. F21V 25/00 362/147
D561,372 S 2/2008 Yan
D561,373 S 2/2008 Yan
D570,012 S 5/2008 Huang
7,374,308 B2 5/2008 Sevack et al.
D570,504 S 6/2008 Maxik et al.
D570,505 S 6/2008 Maxik et al.
7,399,104 B2 7/2008 Rappaport
D578,677 S 10/2008 Huang
7,431,482 B1 10/2008 Morgan et al.
7,473,005 B2 1/2009 O'Brien
7,488,097 B2 2/2009 Reisenauer et al.
7,503,145 B2 * 3/2009 Newbold .................. F21S 8/02 52/27
7,524,089 B2 4/2009 Park
D591,894 S 5/2009 Flank
7,534,989 B2 5/2009 Suehara et al.
7,566,154 B2 7/2009 Gloisten et al.
D599,040 S 8/2009 Alexander et al.
D600,836 S 9/2009 Hanley et al.
7,588,359 B2 9/2009 Coushaine et al.
7,592,583 B2 9/2009 Page et al.
7,625,105 B1 12/2009 Johnson
7,628,513 B2 12/2009 Chiu
7,651,238 B2 1/2010 O'Brien
7,654,705 B2 2/2010 Czech et al.
D611,650 S 3/2010 Broekhoff
7,670,021 B2 3/2010 Chou
7,677,766 B2 3/2010 Boyer
D616,118 S 5/2010 Thomas et al.
7,722,208 B1 * 5/2010 Dupre ....................... F21S 8/02 362/147
7,722,227 B2 5/2010 Zhang et al.
7,748,887 B2 7/2010 Zampini, II et al.
7,771,082 B2 8/2010 Peng
D624,692 S 9/2010 Mackin et al.
D625,847 S 10/2010 Maglica
D625,876 S 10/2010 Chen et al.
D627,727 S 11/2010 Alexander et al.
7,828,465 B2 11/2010 Roberge et al.
7,871,184 B2 1/2011 Peng
D633,224 S 2/2011 Lee
D636,903 S 4/2011 Torenbeek
D637,339 S 5/2011 Hasan et al.
D637,340 S 5/2011 Hasan et al.
7,950,832 B2 5/2011 Tanaka et al.
D639,499 S 6/2011 Choi et al.
7,959,332 B2 6/2011 Tickner et al.
7,967,480 B2 6/2011 Pickard et al.
7,972,035 B2 7/2011 Boyer
7,972,043 B2 7/2011 Schutte
D643,970 S 8/2011 Kim et al.
D646,011 S 9/2011 Rashidi
8,038,113 B2 10/2011 Fryzek et al.
D648,476 S 11/2011 Choi et al.
D648,477 S 11/2011 Kim et al.
D650,115 S 12/2011 Kim et al.
8,070,328 B1 12/2011 Knoble et al.
8,096,670 B2 * 1/2012 Trott ........................ F21S 8/02 362/147
D654,205 S 2/2012 Rashidi
D656,263 S 3/2012 Ogawa et al.
8,142,057 B2 3/2012 Roos et al.
8,152,334 B2 4/2012 Krogman
D658,788 S 5/2012 Dudik et al.
D658,802 S 5/2012 Chen
D659,862 S 5/2012 Tsai
D659,879 S 5/2012 Rashidi
D660,814 S 5/2012 Wilson
8,182,116 B2 5/2012 Zhang et al.
8,201,968 B2 6/2012 Maxik et al.
D663,058 S 7/2012 Pan
D663,466 S 7/2012 Rashidi
D664,274 S 7/2012 de Visser et al.
D664,705 S 7/2012 Kong et al.
8,215,805 B2 * 7/2012 Cogliano .................. F21S 8/02 362/364
8,220,970 B1 * 7/2012 Khazi et al. ................. 362/294
8,226,270 B2 7/2012 Yamamoto et al.
D667,155 S 9/2012 Rashidi
8,262,255 B1 9/2012 Rashidi
D668,809 S 10/2012 Rashidi
D669,198 S 10/2012 Qui
D669,199 S 10/2012 Chuang
D669,620 S 10/2012 Rashidi
8,277,090 B2 10/2012 Fryzek et al.
D673,869 S 1/2013 Yu
8,376,593 B2 2/2013 Bazydola et al.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D677,417 S 3/2013 Rashidi
D679,047 S 3/2013 Tickner et al.
8,403,533 B1 3/2013 Paulsel
8,403,541 B1 3/2013 Rashidi
D681,259 S 4/2013 Kong
8,408,759 B1 4/2013 Rashidi
D683,063 S 5/2013 Lopez et al.
D683,890 S 6/2013 Lopez et al.
D684,269 S 6/2013 Wang et al.
D684,719 S 6/2013 Rashidi
D685,118 S 6/2013 Rashidi
D685,120 S 6/2013 Rashidi
8,454,204 B1 6/2013 Chang et al.
D685,507 S 7/2013 Sun
D687,586 S 8/2013 Rashidi
D687,587 S 8/2013 Rashidi
D687,588 S 8/2013 Rashidi
D687,980 S 8/2013 Gravely et al.
D688,405 S 8/2013 Kim et al.
D690,049 S 9/2013 Rashidi
D690,864 S 10/2013 Rashidi
D690,865 S 10/2013 Rashidi
D690,866 S 10/2013 Rashidi
D691,314 S 10/2013 Rashidi
D691,315 S 10/2013 Samson
8,550,669 B2 10/2013 Macwan et al.
D693,043 S 11/2013 Schmalfuss et al.
D693,517 S 11/2013 Davis
D694,456 S 11/2013 Rowlette, Jr. et al.
2,815,067 A1 11/2013 Kathawate et al.
D695,441 S 12/2013 Lui et al.
D696,446 S 12/2013 Huh
D696,447 S 12/2013 Huh
D696,448 S 12/2013 Huh
8,602,601 B2 12/2013 Khazi et al.
D698,067 S 1/2014 Rashidi
D698,068 S 1/2014 Rashidi
D698,985 S 2/2014 Lopez et al.
D699,384 S 2/2014 Rashidi
D700,387 S 2/2014 Snell
8,641,243 B1 * 2/2014 Rashidi .................... F21S 8/02 257/712
D701,466 S 3/2014 Clifford et al.
8,672,518 B2 3/2014 Boomgaarden et al.
D702,867 S 4/2014 Kim et al.
D703,843 S 4/2014 Cheng
8,684,569 B2 4/2014 Pickard et al.
D705,472 S 5/2014 Huh
D710,529 S 8/2014 Lopez et al.
8,801,217 B2 8/2014 Oehle et al.
D714,989 S 10/2014 Rowlette, Jr. et al.
8,870,426 B2 10/2014 Biebl et al.
8,890,414 B2 11/2014 Rowlette, Jr. et al.
D721,845 S 1/2015 Lui et al.
8,950,898 B2 * 2/2015 Catalano .................. F21S 8/02 362/249.02
D726,363 S 4/2015 Danesh
9,039,254 B2 5/2015 Danesh
D731,689 S 6/2015 Bernard et al.
9,062,866 B1 6/2015 Christ et al.
9,068,719 B2 6/2015 Van De Ven et al.
9,078,299 B2 7/2015 Ashdown
D739,590 S 9/2015 Redfern
9,140,441 B2 9/2015 Goelz et al.
9,151,457 B2 10/2015 Pickard et al.
9,151,477 B2 10/2015 Pickard et al.
9,285,103 B2 3/2016 Van De Ven et al.
9,291,319 B2 3/2016 Kathawate et al.
9,301,362 B2 3/2016 Dohn et al.
9,310,038 B2 4/2016 Athalye
9,347,655 B2 5/2016 Boomgaarden et al.
D762,181 S 7/2016 Lin
D762,906 S 8/2016 Jeswani et al.
D764,079 S 8/2016 Wu
9,417,506 B1 8/2016 Tirosh
D768,325 S 10/2016 Xu
D768,326 S 10/2016 Guzzini
D769,501 S 10/2016 Jeswani et al.
D770,065 S 10/2016 Tittle
9,476,552 B2 10/2016 Myers et al.
D776,324 S 1/2017 Gierl et al.
9,534,751 B2 1/2017 Maglica et al.
D778,484 S 2/2017 Guzzini
9,581,302 B2 2/2017 Danesh
9,599,315 B1 3/2017 Harpenau et al.
9,605,910 B2 3/2017 Swedberg et al.
D785,228 S 4/2017 Guzzini
D786,472 S 5/2017 Redfern
D786,474 S 5/2017 Fujisawa
D790,102 S 6/2017 Guzzini
9,702,516 B1 7/2017 Vasquez et al.
9,791,111 B1 10/2017 Huang et al.
D809,176 S 1/2018 Partington
2002/0172047 A1 11/2002 Ashley
2005/0225966 A1 10/2005 Hartmann et al.
2005/0227536 A1 10/2005 Gamache et al.
2005/0237746 A1 10/2005 Yiu
2006/0158873 A1 7/2006 Newbold et al.
2006/0215408 A1 9/2006 Lee
2007/0035951 A1 2/2007 Tseng
2007/0185675 A1 8/2007 Papamichael et al.
2007/0206374 A1 9/2007 Petrakis et al.
2008/0112168 A1 5/2008 Pickard et al.
2008/0112170 A1 5/2008 Trott
2008/0112171 A1 5/2008 Patti et al.
2008/0137347 A1 6/2008 Trott et al.
2008/0165545 A1 * 7/2008 O'Brien .................... F21S 8/02 362/364
2008/0232116 A1 9/2008 Kim
2009/0003009 A1 1/2009 Tessnow et al.
2009/0034261 A1 * 2/2009 Grove ....................... F21S 8/02 362/294
2009/0080189 A1 3/2009 Wegner
2009/0135613 A1 5/2009 Peng
2009/0141500 A1 6/2009 Peng
2009/0141508 A1 6/2009 Peng
2009/0147517 A1 6/2009 Li
2009/0161356 A1 6/2009 Negley et al.
2009/0237924 A1 9/2009 Ladewig
2009/0280695 A1 11/2009 Sekela et al.
2010/0014282 A1 1/2010 Danesh
2010/0061108 A1 3/2010 Zhang et al.
2010/0110690 A1 5/2010 Hsu et al.
2010/0110698 A1 5/2010 Harwood et al.
2010/0148673 A1 6/2010 Stewart et al.
2010/0149822 A1 6/2010 Cogliano et al.
2010/0244709 A1 9/2010 Steiner et al.
2010/0246172 A1 9/2010 Liu
2010/0259919 A1 10/2010 Khazi et al.
2010/0270903 A1 10/2010 Jao et al.
2010/0302778 A1 12/2010 Dabiet et al.
2011/0063831 A1 3/2011 Cook
2011/0068687 A1 3/2011 Takahasi et al.
2011/0069499 A1 3/2011 Trott et al.
2011/0116276 A1 5/2011 Okamura et al.
2011/0134634 A1 6/2011 Gingrich, III et al.
2011/0134651 A1 6/2011 Berman
2011/0170294 A1 7/2011 Mier-Langner et al.
2011/0194299 A1 8/2011 Crooks et al.
2011/0216534 A1 9/2011 Tickner et al.
2011/0226919 A1 9/2011 Fryzek et al.
2011/0255292 A1 10/2011 Shen
2011/0267828 A1 * 11/2011 Bazydola .................. F21S 8/02 362/373
2012/0020104 A1 1/2012 Biebl et al.
2012/0074852 A1 3/2012 Delnoij
2012/0106176 A1 5/2012 Lopez et al.
2012/0113642 A1 5/2012 Catalano
2012/0140442 A1 6/2012 Woo et al.
2012/0162994 A1 6/2012 Wasniewski et al.
2012/0182744 A1 7/2012 Santiago et al.
2012/0188762 A1 7/2012 Joung et al.
2012/0287625 A1 11/2012 Macwan et al.
2013/0009552 A1 1/2013 Page

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2013/0010476 | A1* | 1/2013 | Pickard et al. | 362/311.03 |
| 2013/0051012 | A1* | 2/2013 | Oehle et al. | 362/235 |
| 2013/0141913 | A1 | 6/2013 | Sachsenweger | |
| 2013/0163254 | A1 | 6/2013 | Chang et al. | |
| 2013/0170233 | A1 | 7/2013 | Nezu et al. | |
| 2013/0258677 | A1 | 10/2013 | Fryzek et al. | |
| 2013/0294084 | A1 | 11/2013 | Kathawate et al. | |
| 2013/0322062 | A1 | 12/2013 | Danesh | |
| 2014/0049957 | A1 | 2/2014 | Goelz et al. | |
| 2014/0140490 | A1 | 5/2014 | Roberts et al. | |
| 2014/0063818 | A1 | 6/2014 | Randolph et al. | |
| 2014/0254177 | A1 | 9/2014 | Danesh | |
| 2014/0347848 | A1 | 11/2014 | Pisavadia et al. | |
| 2015/0198324 | A1 | 7/2015 | O'Brien et al. | |
| 2015/0233556 | A1 | 8/2015 | Danesh | |
| 2015/0276185 | A1 | 10/2015 | Bailey et al. | |
| 2016/0312987 | A1 | 10/2016 | Danesh | |
| 2016/0348860 | A1 | 12/2016 | Danesh | |
| 2016/0348861 | A1 | 12/2016 | Bailey et al. | |
| 2016/0366738 | A1 | 12/2016 | Boulanger et al. | |
| 2017/0045213 | A1 | 2/2017 | Williams et al. | |
| 2017/0138576 | A1 | 5/2017 | Peng et al. | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CN | 101608781 | | 12/2009 |
| CN | 201636626 | U | 11/2010 |
| CN | 202392473 | U | 11/2011 |
| CN | 103307518 | A | 3/2012 |
| CN | 103322476 | A | 9/2013 |
| CN | 203215483 | U | 9/2013 |
| CN | 20327663 | U | 11/2013 |
| CN | 101498411 | B | 11/2013 |
| CN | 104654142 | A | 11/2013 |
| CN | 203297980 | U | 11/2013 |
| CN | 103712135 | B | 12/2013 |
| CN | 203628464 | U | 12/2013 |
| CN | 203641919 | U | 6/2014 |
| CN | 204513161 | U | 7/2015 |
| CN | 204611541 | U | 9/2015 |
| CN | 204829578 | U | 12/2015 |
| CN | 205606362 | U | 9/2016 |
| CN | 2016130742 | U | 4/2017 |
| CN | 103154606 | B | 5/2017 |
| DE | 9109828 | U1 | 2/1992 |
| EP | 1672155 | A1 | 6/2006 |
| EP | 2 306 072 | A1 | 4/2011 |
| EP | 2 453 169 | A2 | 5/2012 |
| EP | 2 193 309 | B1 | 7/2012 |
| JP | 2011060450 | A2 | 3/2011 |
| JP | 2012064551 | A2 | 3/2012 |
| JP | 2015002027 | A2 | 6/2013 |
| JP | 2015002028 | A2 | 1/2015 |
| JP | 20171076699 | A2 | 6/2017 |
| KR | 1020110008796 | A | 1/2011 |
| KR | 1020120061625 | A | 6/2012 |
| WO | WO 2013/128896 | A1 | 9/2013 |
| WO | WO 2015/000212 | A1 | 1/2015 |
| WO | WO 2016152166 | A2 | 8/2016 |

OTHER PUBLICATIONS

CA Office Action (dated Dec. 23, 2013), Application No. 2,778,581, Date Filed—Jun. 1, 2012, (3 pages).

DMF, Inc., "dmfLighting: LED Recessed Lighting Solutions", Info sheets, (Mar. 19, 2012), (4 pages).

Halo, Halo LED H4 H7 Collection, SustainabLEDesign, Cooper Lighting, (emphasis on p. 18 "H7 Collection LED Modules—Halo LED H7 Module Features"), (Mar. 28, 2012), (52 pages).

Halo, H7 LED Downlight Trims 49x Series, 6-inch LED Trims For Use With ML7x LED Modules, Cooper Lighting, ADV110422, (rev. Aug. 12, 2011), (15 pages).

Halo, LED Module ML706x, Cooper Lighting, Oct. 20, 2009, 4 pages, General Installation for All Modules/p. 1; Tether Installation/pp. 2-3; Installation into HALO H750x Series LED—only (Non-Screw based) Recessed Fixture (p. 4).

Final Office Action (dated Apr. 2, 2015), U.S. Appl. No. 13/484,901, filed May 31, 2012, First Named Inventor: Michael D. Danesh, 13 pages.

Final Office Action (dated Jan. 29, 2016), U.S. Appl. No. 14/183,424, filed Feb. 18, 2014, First Named Inventor: Michael D. Danesh, 21.

CA Office Action (dated Feb. 1, 2016), Application No. 2,879,486, Filing Date: Jan. 23, 2015, First Named Inventor: Michael D. Danesh, 5.

Non-Final Office Action (dated Jun. 2, 2015), U.S. Appl. No. 12/183,424, filed Jan. 18, 2014, First Named Inventor: Michael D. Danesh, 20 pages.

Non-Final Office Action (dated Sep. 15, 2015), U.S. Appl. No. 13/484,901, filed May 31, 2012. First Named Inventor: Michael D. Danesh, 16.

"CA Office Action (dated Dec. 23, 2013), Application No. 2,778,581, Date Filed—Jun. 1, 2012", 3 pages.

CA Office Action (dated Mar. 22, 2016), Application No. 2,879,629, Filing Date: Jan. 23, 2015; First named Inventor: Michael D. Danesh.

Final Office Action (dated Jun. 23, 2016), U.S. Appl. No. 13/484,901, filed May 31, 2012, First Named Inventor: Michael D. Danesh, 18 pages.

"DME Series Installation Instructions", (Oct. 18, 2011).

U.S. Non-Final Office Action, dated May 17, 2017, U.S. Appl. No. 14/183,424.

Canadian Office Action, dated Mar. 9, 2017, Canadian Application No. 2,931,588.

Canadian Office Action, dated Dec. 6, 2016, Canadian Application No. 2,879,629.

Canadian Office Action dated Jun. 12, 2017 from Canadian Application No. 2,927,601, 4 pages.

Canadian Office Action dated Aug. 11, 2017 from Canadian Application No. 2,941,051, 4 pages.

Notice of Allowance dated Aug. 23, 2017 from Canadian Application No. 2,879,629, 1 page.

Notice of Allowance dated Oct. 21, 2016 from U.S. Appl. No. 13/484,901, 7 pages.

2006 International Building Code, Section 712 Penetrations, 2006, 4 pages.

BXUV.GuideInfo, Fire Resistance Ratings—ANSI/UL 263, UL Online Certifications Directory, last updated Nov. 23, 2016, 27 pages.

CEYY.GuideInfo, Outlet Boxes and Fittings Certified for Fire Resistance, UL Online Certifications Directory, last updated May 16, 2013, 2 pages.

DMF, Inc., "dmfLIGHTING: LED Recessed Downlighting," DRD2 Product Brochure, Oct. 23, 2014, 49 pages.

DMF, Inc., "dmfLIGHTING: LED Recessed Downlighting," Product Catalog, Aug. 2012, 68 pages.

"Membrane Penetrations in Fire-Resistance Rated Walls," https://www.ul.com/wp-content/uploads/2014/04/ul_MembranePenetrations.pdf, Issue 1, 2009, 2 pages.

"Metallic Outlet Boxes," UL 514A, Underwriters Laboratories, Inc., Feb. 16, 2004 (Title Page Reprinted Aug. 10, 2007), 106 pages.

"Metallic and Non-metallic Outlet Boxes Used in Fire-rated Assembly," https://iaeimagazine.org/magazine/2000/09/16/metallic-and-non-metallic-outlet-boxes-used-in-fire-rated-assembly/, Sep. 16, 2000, 5 pages.

Non-Final Office Action dated Mar. 15, 2010 from U.S. Appl. No. 12/100,148, 8 pages.

Non-Final Office Action dated Apr. 30, 2010 from U.S. Appl. No. 12/173,232, 13 pages.

Non-Final Office Action dated Sep. 5, 2014 from U.S. Appl. No. 13/791,087, 8 pages.

Notice of Allowance dated Jan. 30, 2015 from U.S. Appl. No. 13/791,087, 9 pages.

Notice of Allowance dated Jan. 16, 2015 from U.S. Appl. No. 29/467,026, 9 pages.

(56) **References Cited**

OTHER PUBLICATIONS

"Outlet Boxes for Use in Fire Rated Assemblies," https://www.ul.com/wp-content/uploads/2014/04/Ul_outletboxes.pdf, 2011, 2 pages.
Non-Final Office Action dated Feb. 6, 2018 from U.S. Appl. No. 15/167,682, 9 pages.
Non-Final Office Action dated Sep. 6, 2017 from U.S. Appl. No. 14/726,064, 8 pages.
Notice of Allowance dated Mar. 24, 2016 from U.S. Appl. No. 14/247,149, 8 pages.

* cited by examiner


22
6A
25B
8
7
21
4
13
27B
11B
15A
5A
18
17
3
6
25A
19
20
16
15
5
12
10B
27A
11A
14
10A
9B
23B
23A
2
9A

*FIG. 1*




FIG. 2




FIG. 3

# UNIFIED DRIVER AND LIGHT SOURCE ASSEMBLY FOR RECESSED LIGHTING

## RELATED MATTERS

This application claims the benefit of the earlier filing date of U.S. provisional application No. 61/843,278, filed Jul. 5, 2013.

## FIELD

An embodiment relates to a compact recessed lighting system that includes a light source module and a driver in a single unified casting, which along with an optical light reflector shields the driver from exposure to outside elements and allows the recessed lighting system to be installed in a standard junction box. In some embodiments, this compact recessed lighting system may be utilized in 4-10" recessed new construction and remodel products and in retrofit applications. Moreover, in some embodiments, this compact recessed lighting system may be utilized with interchangeable trims to accommodate different aperture luminaires. Other embodiments are also described.

## BACKGROUND

Recessed lighting systems are typically installed or mounted into an opening in a ceiling or a wall. Recessed lighting systems generally consist of a trim, a light source module, a driver, and a "can" housing. The driver is insulated from other portions and components of the recessed lighting system, including the light source module, through the use of a separate insulating container. The driver may be electrically coupled to the light source module through the use of wires or other conduits such that the driver may power the light source module to emit light.

The separation between the driver and the light source module adds to the combined size of the recessed lighting system. In particular, the use of a separate container that houses the driver separate from the other portions and components of the recessed lighting system, including the light source module, increases the size of the recessed lighting system. This increased size restricts the recessed lighting system to be placed in constrained spaces within a ceiling or a wall and may increase the overall cost of the recessed lighting system.

## BRIEF DESCRIPTION OF THE DRAWINGS

The embodiments of the invention are illustrated by way of example and not by way of limitation in the figures of the accompanying drawings in which like references indicate similar elements. It should be noted that references to "an" or "one" embodiment of the invention in this disclosure are not necessarily to the same embodiment, and they mean at least one.

FIG. **1** shows an exploded view of a recessed lighting system according to one embodiment.

FIG. **2** shows top and side views of a junction box according to one embodiment.

FIG. **3** shows a side view of the recessed lighting system according to one embodiment.

## DETAILED DESCRIPTION

Several embodiments are described with reference to the appended drawings are now explained. While numerous



details are set forth, it is understood that some embodiments of the invention may be practiced without these details. In other instances, well-known circuits, structures, and techniques have not been shown in detail so as not to obscure the understanding of this description.

FIG. **1** shows an exploded view of a recessed lighting system **1**. The recessed lighting system **1** may include a junction box **2**, a light source module **3**, a driver (e.g., a power supply) **4**, a unified casting **5**, a reflector **6**, a lens **7**, and a trim **8**. As will be described in further detail below, the recessed lighting system **1** provides a more compact and cost effective design while complying with all building and safety codes/regulations. Although shown with a single junction box **2** and trim **8**, the light source module **3**, the driver **4**, the unified casting **5**, the reflector **6**, and the lens **7** may be similarly used with different sized junction boxes **2** and trims **8**. Each of the elements of the recessed lighting system **1** will be explained by way of example below.

The junction box **2** is a structure that separates the inner components of the recessed lighting system **1**, including electrical wires/cables, from the items inside a ceiling or crawl space (e.g., insulation) in which the junction box **2** has been installed. In one embodiment, the junction box **2** is directly coupled to a stud, beam, or other structural member inside the ceiling or crawl space through the use of resins, clips, screws, bolts, clamps, or any other type of connecting mechanism. The junction box **2** may be equipped with one or more bar-hangers to assist installation when the junction box **2** needs to be located between two studs or joists. In one embodiment, the junction box **2** may be a single or double gang box with a fire rating of up to two hours as described in the National Electrical Code (NEC) and by the Underwriters Laboratories (UL). The junction box **2** may receive electrical wires **9**A from an electrical system (e.g., 120 VAC or 277 VAC) within a building or structure in which the recessed lighting system **1** is installed. The electrical wires **9**A from the structure may be connected to corresponding wires **9**B of the unified casting **5**, as will be described in greater detail below.

In one embodiment, the junction box **2** may include one or more tabs **10**A, **10**B for coupling the junction box **2** to the casting **5**. The tabs **10**A, **10**B may be any device/component for receiving corresponding elements **27**A, **27**B of the casting **5** to firmly hold the weight of the unified casting **5**, the light source module **3**, the driver **4**, the reflector **6**, the lens **7**, and/or the trim **8** up against the junction box **2**. As shown in FIG. **1**, the tabs **10**A, **10**B include holes for receiving screws or bolts **25**A, **25**B through the corresponding elements **27**A, **27**B; however, in other embodiments the tabs **10**A, **10**B may facilitate a twist-and-lock friction connection with corresponding elements **27**A, **27**B of the casting **5** and without the use of separate tools or other devices. In still other embodiments, friction or tension clips may be utilized to couple the casting **5** to the junction box **2**.

In one embodiment, the junction box **2** acts as a heat barrier to block heat emitted by the light source module **3** and the driver **4** from reaching possibly flammable items inside a ceiling or crawl space. In these embodiments, the junction box **2** may be formed of metals, polymers, metal alloys, and/or other heat insulating materials. As shown in FIG. **1**, the junction box **2** may be a polygon that defines a cavity **12** therein. However, in other embodiments, the junction box **2** may be any suitable shape, including an ellipsoid, cone, or cylinder that is capable of receiving therein the casting **5**. The cavity **12** that is formed in the junction box **2** may be larger than the casting **5** such that the casting **5** may easily fit into the cavity **12** without coming

into direct contact with the walls of the cavity **12**. However, in other embodiments, the casting **5** may be sized to come into direct contact with the walls of the cavity **12**. The size of the cavity **12** may be pursuant to popular industry specifications for junction boxes and in compliance with all applicable building and safety codes/regulations. For example, as shown in FIG. **2**, the junction box **2** may have a length of 3½ inches, a width of 3½ inches and a depth of 1½ inches. When coupled together, the combined junction box **2**, light source module **3**, driver **4**, casting **5**, reflector **6**, lens **7**, and trim **8** may have a height/depth of 2 inches.

The junction box **2** is a shell and/or enclosure that further prevents the exposure of heat from the light source module **3** and the driver **4** to the items inside a ceiling or crawl space (e.g., insulation) in which the recessed lighting system **1** has been installed. The casting **5** may be formed of metals, polymers, metal alloys, and/or other materials. As shown in FIG. **1**, the casting **5** may be a cylindrical structure that defines a casting cavity **13** therein. However, in other embodiments, the casting **5** may be any suitable shape, including an ellipsoid, cone, or polygon that is capable of housing the light source module **3** and the driver **4**. As shown in FIGS. **1** and **3**, the cavity **13** is to receive therein the light source module **3** and the driver **4**.

In one embodiment, the casting **5** may include a closed rear face **14** and an open front face **15***a*. The closed rear face **14** allows the light source module **3** and the driver **4** to be securely mounted to the casting **5**, while the open front face **15***a* provides an aperture to allow light emitted by the light source module **3** to be exposed to an outside environment surrounding the recessed lighting system **1** (e.g., into a room). In one embodiment, the rear face **14** of the casting **5** may include one or more mounting elements for receiving and securely holding the light source module **3** and the driver **4**. In some embodiments, the mounting elements may be holes, flaps, or other structures designed to receive the light source module **3** and the driver **4**. The mounting elements may be capable of receiving resins, clips, screws, bolts, clamps, or any other type of connecting mechanism such that the light source module **3** and the driver **4** may be securely coupled inside the cavity **13** on the rear face **14** of the casting **5**. In one embodiment, the light source module **3** and the driver **4** are removably coupled to the casting **5** while in other embodiments one or more of the light source module **3** and the driver **4** form a single continuous and indivisible component with the casting **5**.

Although described as a casting **5**, the casting **5** may be formed through other processes other than casting techniques. For example, the casting **5** may be formed through an extrusion process or formed through the welding of metal sheets to form a structure. Further, although described as an enclosed assembly, the casting **5** may be any heat conducting structure to which the light source module **3** and the driver **4** are mounted and which can be mounted, using any type of fasteners or mounting elements, to the junction box **2**.

In one embodiment, the electrical wires **9**A received by the junction box **2** from the electrical system of a building or structure may be coupled to the electrical wires **9**B of the casting **5**. The electrical wires **9**A may be coupled to the electrical wires **9**B through the use of electrical caps or other devices. For example, as shown in FIG. **1**, the electrical wires **9**A and **9**B may be connected using the connectors **23**A and **23**B. The connectors **23**A and **23**B are complimentary, keyed or interlocking connectors. The electrical wires **9**B of the casting **2** may terminate in a connector holder **16** that may receive a corresponding connector **17** of the driver **4**. In one embodiment, the connectors **16** and **17** are complimentary, keyed or interlocking connectors similar to the connectors **23**A and **23**B described above. When the connectors **16** and **17** are engaged, electricity may pass from the electrical system of the building or structure to the driver **4**.

In one embodiment, the casting **5** includes one or more heat sinks **18** to dissipate heat generated by the light source module **3** and/or the driver **4**. Although the heat sinks **18** are shown as passive components that cool the combined casting **5**, light source module **3**, and driver **4** by dissipating heat into the surrounding air, active heat sinks (e.g., fans) may also be used. In one embodiment, the heat sinks **18** are defined by a set of fins surrounding the casting **5**. The heat sinks **18** may be composed of any thermally conductive material. For example, the heat sinks **18** may be made of aluminium alloys, copper, copper-tungsten pseudoalloy, AlSiC (silicon carbide in aluminium matrix), Dymalloy (diamond in copper-silver alloy matrix), E-Material (beryllium oxide in beryllium matrix), and/or thermally conductive plastics or ceramics.

As described above, the recessed lighting system **1** may include the driver **4**. The driver **4** is an electronic device that supplies and/or regulates electrical energy to the light source module **3** and thus powers the light source module **3** to emit light. The driver **4** may be any type of power supply, including power supplies that deliver an alternating current (AC) or a direct current (DC) voltage to the light source module **3**. In one embodiment, the driver **4** receives electricity from the casting **5** via a connector. In one embodiment, the connector **17** is coupled to the connector holder **16** of the casting **5** such that electrical wires are not protruding from the casting **5**. In this embodiment, the supply connection from the driver **4** terminates in connector **17**, which is force-fitted into connector holder **16**. In another embodiment, the driver **4** may connect to the supply wires, **9**A, via wire nuts.

Upon receiving electricity, the driver **4** may regulate current or voltage to supply a stable voltage or current within the operating parameters of the light source module **3**. The driver **4** receives an input current from the electrical system of the building or structure in which the recessed lighting system **1** is installed and drops the voltage of the input current to an acceptable level for the light source module **3** (e.g., from 120V-240V to 36V-48V). The driver **4** may transfer electricity to the light source module **3** through an electrical connector. For example, the driver **4** may deliver electricity to the light source module **3** through an electrical cable coupled between the light source module **3** and the driver **4** through removable or permanent connectors or soldered leads originating from the driver **4**. Although shown with magnetic transformer **19**, the driver **4** may include additional circuitry for regulating current to the light source module **3**.

As shown in FIG. **1**, the driver **4** may also include the board **20** for holding the magnetic transformer **19** and other circuitry. In one embodiment, the board **20** is formed in a "donut", torus, or "C" shape with an opening **21**. The outside edge of the board **20** is coupled to the casting **5**, while the opening **21** formed by the board **20** allows the light source module **3** to be directly coupled to the casting **5** without coming into direct contact with the driver **4**. By forming a structure with the opening **21**, the driver **4** allows the light source module **3** to avoid the driver **4**, eliminating shadows or interference from the driver **4**, and allows the light source module **3** to directly contact the casting **5**, assisting the casting **5** to dissipate heat generated by the light source module **3**. This compact structure allows the light source module **3** and the driver **4** to be contained within the unified

casting **5**, which in turn may fit inside a standard junction box (i.e., junction box **2**) and/or a 4-8 inch recessed lighting fixture (both incandescent and non-incandescent). Accordingly, the recessed lighting system **1** can operate without the use of a "can" housing structure. This simplified and more compact structure reduces the cost and complexity of installing the recessed lighting structure **1** into an existing/pre-installed junction box or a newly installed junction box. Further, this configuration allows the recessed lighting system **1** to achieve a UL fire-rating of at least two hours.

In one embodiment, the board **20** may be a printed circuit board. The driver **4** may be coupled to the casting **5** using any connecting mechanism, including resins, clips, screws, bolts, or clamps. For example, in one embodiment, the driver **4** may be coupled to the casting **5** using friction or tension clips.

The light source module **3** may be any electro-optical device or combination of devices for emitting light. For example, the light source module **3** may have as a single light source a light emitting diode (LED), organic light-emitting diode (OLED), or polymer light-emitting diode (PLED). In some embodiments, the light source module **3** may have multiple light sources (e.g., LEDs, OLEDs, and/or PLEDs). The light source module **3** receives electricity from the driver **4**, as described above, such that the light source module **3** may emit a controlled beam of light into a room or surrounding area. The driver **4** is designed to ensure that the approximate voltage and current are fed to the light source module **3** to enable the emission of light by the one or more light sources within the light source module **3**.

As described above and shown in FIG. **1**, the light source module **3** is coupled to the casting **5** in the opening **21** formed by the board **20**. As described above, by positioning the light source module **3** in the opening **21**, the light source module **3** may avoid the driver **4**, thus eliminating shadows or interference from the driver **4**, and allowing the light source module **3** to directly contact the casting **5**, such that the casting **5** can dissipate heat generated by the light source module **3**. Further, this compact design allows the recessed lighting system **1** to utilize a standard sized junction box (e.g., junction box **2**) instead of a "can" housing structure. As shown in FIG. **1**, the light source module **3** is coupled to the casting **5** using screws; however, in other embodiments, the light source module **3** may be coupled to the casting **5** using any connecting mechanism, including resins, clips, screws, bolts, or clamps. For example, in one embodiment, the light source module **3** may be coupled to the casting **5** using friction or tension clips. In one embodiment, the casting **5** may include an insulating gasket **25** that separates the board **20** and the casting **5**. The insulating gasket **25** may be placed on a groove **24** that encircles the open front face **15***a* of the casting **5**. The insulating gasket **25** may be formed of materials that provide some degree of malleability and/or flexibility such that the gasket **25** is able to deform and tightly fit within the groove **24**, including any slight irregularities. For example, the insulating gasket **25** may be formed of plastic, rubber, metal, and/or ceramic materials. The insulating gasket **25** assists in insulating the driver **4** from the outside environment.

In some embodiments, the recessed lighting system **1** may include the reflector **6**. The reflector **6** may surround the light source module **3** and/or a light source of the light source module **3** to adjust the way light emitted by the light source module **3** is focused inside a room or surrounding area. In one embodiment, the reflector **6** surrounds the light source module **3** and separates the light source module **3** from the driver **4**. This separation allows light from the light source module **3** to be emitted into a room or surrounding area while further shielding the driver **4** from being exposed to the room or surrounding area. For example, in one embodiment, the reflector **6** and the casting **5** may be coupled together such that the combined assembly may create a sealed structure to shield the driver **4** from the outside environment and the light source module **3**. By shielding the driver **4** from the outside environment, the reflector **6** reduces the risk of fire or other dangers and ensures the recessed lighting system **1** complies with building and safety codes/regulations. The reflector **6** may be formed of any fire retardant material, including steel, aluminum, metal alloys, calcium silicate, and other similar materials.

In one embodiment, the reflector **6** may be coupled to the casting **5** using screws, rivets or other fasteners. The reflector **6** may also be designed as a snap fit into the casting **5**.

Although shown as conical, the reflector **6** may be formed in any shape that may direct and/or focus light. For example, the reflector **6** may be parabolic, spherical, or a frusto-conical shape that is positioned over the light source module **3** while shielding the driver **4**. In one embodiment, the reflector **6** may be coated with a reflecting material or include one or more reflecting elements that assist in the adjustment of light emitted by the light source module **3**. For example, the reflector **6** may be coated with a shiny enamel or include one or more mirrors or retroreflectors or a microcellular polyethylene terephthalate (MCPET) material to adjust the focus of light emitted by the light module **3**. In other embodiments, the reflector **6** may include various other optic elements to assist in the focusing of light emitted by the light source module **3**.

In one embodiment, the recessed lighting system **1** may include a lens **7**. The lens **7** may be formed to converge or diverge light emitted by the light source module **3**. The lens **7** may be a simple lens comprised of a single optical element or a compound lens comprised of an array of simple lenses (elements) with a common axis. In one embodiment, the lens **7** also provides a protective barrier for the light source module **3** and shields the light source module **3** from moisture or inclement weather. The lens **7** may also assist in the diffusion of light and increase the uniformity of light over the surface of the recessed lighting system **1**. The lens **7** may be made of any at least partially transparent material, including glass and hard plastics. In one embodiment, the lens **7** and the reflector **6** are contained in a single indivisible unit to work in conjunction to focus and adjust light emitted by the light source module **3**. In other embodiments, the lens **7** and the reflector **6** are separate, divisible elements as shown in FIG. **1**.

In one embodiment, the recessed lighting system **1** may include a trim **8**. The trim **8** serves the primary purpose of covering the exposed edge of the ceiling or wall where a hole is formed in which the recessed lighting system **1** resides while still allowing light from the light source module **3** to be emitted into a room through an aperture **22**. In doing so, the trim **8** helps the recessed lighting system **1** appear seamlessly integrated into the ceiling or wall. In one embodiment, the trim **8** is capable of coupling to the casting **5** while in other embodiments the trim **8** is capable of coupling to the junction box **2**. The trim **8** may couple to the casting **5** and/or the junction box **2** using any connecting mechanism, including resins, clips, screws, bolts, or clamps. In one embodiment, the trim **8** may include grooves and/or slots to couple to corresponding grooves and/or slots of the casting **5** and/or the junction box **2** using a twist-and-lock friction connection and without the use of separate tools or other devices.

In one embodiment, different diameter trims **8** may be capable of being coupled to the casting **5** and/or the junction box **2**. The size and design of the trims **8** may depend on the size of the hole in which the recessed lighting system **1** has been fitted and that the trim **8** must conceal, as well as the aesthetic decisions of the consumer. The trims **8** may be made of aluminum plastic polymers, alloys, copper, copper-tungsten pseudoalloy, AlSiC (silicon carbide in aluminum matrix), Dymalloy (diamond in copper-silver alloy matrix), and E-Material (beryllium oxide in beryllium matrix).

As described above, the light source module **3** and the driver **4** may be integrated into the unified casting **5** while shielding the driver **4** from exposure to outside elements through the use of the reflector **6** or the lens **7**. Based on this configuration, the compact recessed lighting system **1** provides a more compact design that allows the combined unified casting **5**, light source module **3**, driver **4**, and reflector **6** to be installed in a standard junction box instead of a "can" housing structure to reduce the overall cost of the recessed lighting system **1** while still complying with all building and safety codes/regulations. This configuration also allows the recessed lighting system **1** to achieve a UL fire-rating of at least two hours.

While certain embodiments have been described and shown in the accompanying drawings, it is to be understood that such embodiments are merely illustrative of and not restrictive on the broad invention, and that the invention is not limited to the specific constructions and arrangements shown and described, since various other modifications may occur to those of ordinary skill in the art. The description is thus to be regarded as illustrative instead of limiting.

As shown in FIG. **1** and in FIG. **2**, a trim **8** is assembled and retained to housing **5** by interlocking with twist-and-lock flanges **11**A, **11**B formed integrally with housing **5**. The two twist and lock flanges **11**A **11**B are better seen in FIG. **1** to extend radially from diametrically opposite sides of the front end face **15** integrally with side wall **5***a* of housing **5**, and the forward surfaces of the locking flanges **11**A **11**B are seen to be flush with the front end face **15**.

As best seen in FIG. **3** flanges **11**A, **11**B also are substantially coplanar with the lens **7** as well as coplanar with a first circular rabbet recess **29**A defined along an inner edge of front end face **15** and containing the lens **7**. Consequently, with the lens installed in the rabbet, the front or exterior surface of lens **7** and forward surfaces of the flanges **11**A, **11**B define a nearly planar front surface for the compact light.

The unitary structure of the housing **5** and the coplanar location of the trim interlocking flanges **11**A, **11**B allow a reduction in total height of the compact light as measured between lens **7** and rear wall **14**. Such reduced height in turn facilitates installation of the light in a standard but relatively small junction box which already has received a sufficient fire rating, so that the compact light can be installed in a ceiling directly in a j-box without use of a "can", as has been explained previously herein, thus greatly simplifying installation of the compact light.

The rabbet may be a two step rabbet, as seen in FIGS. **1** and **3**, such that the lens **7** is held in the larger diameter outer rabbet **29**A and a rim **6***a* of reflector **6** is held in the smaller diameter inner rabbet **29**B.

What is claimed is:

**1**. A compact recessed lighting system, comprising:

a light source module for emitting light;

a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;

a unified casting with a heat conducting closed rear face, a heat conducting sidewall and an open front face wherein the heat conducting sidewall is joined to the heat conducting closed rear face at one end and defines the open front face of the unified casting at another end, wherein the heat conducting sidewall has a first dimension between the heat conducting closed rear face and the open front face of less than 2 inches and extends 360 degrees around a center axis of the unified casting to define a first cavity that extends forward from the heat conducting closed rear face to the open front face of the unified casting and outward to the heat conducting sidewall, wherein the light source module and the driver are positioned inside the first cavity while being coupled to the heat conducting closed rear face of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting, and wherein the unified casting includes a plurality of elements positioned proximate to the open front face so as to align with corresponding tabs of a standard junction box and thereby facilitate holding the unified casting up against the standard junction box when the unified casting is installed in the standard junction box; and

a reflector positioned inside the first cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,

wherein the heat conducting closed rear face and the heat conducting sidewall of the unified casting significantly dissipate heat generated by the light source module during operation of the light source module.

**2**. The compact recessed lighting system of claim **1**, wherein the driver is donut shaped or "C" shaped.

**3**. The compact recessed lighting system of claim **1**, further comprising a trim directly coupled to the unified casting, wherein the trim connects to the unified casting through use of retention clips or springs.

**4**. The compact recessed lighting system of claim **1**, wherein:

the light source module is a light emitting diode (LED) module; and

the light source module is coupled to the heat conducting closed rear face of the unitary casting using at least one of a resin, one or more clips, one or more bolts, one or more screws, and one or more clamps.

**5**. The compact recessed lighting system of claim **1**, further comprising:

a lens to shield the light source module while being transmissive to light emitted by the light source module.

**6**. The compact recessed lighting system of claim **1**, further comprising:

an inner enclosure for enclosing the driver within the unified casting.

7. The compact recessed lighting system of claim 1, wherein the heat conducting sidewall of the unified casting has heat sink fins formed on its outside surface.

8. The compact recessed lighting system of claim 1, further comprising:

the standard junction box having a closed rear end, an open front end, and a sidewall surrounding a second cavity,

wherein:

the heat conducting closed rear face of the unified casting has a second dimension across the closed rear face that is less than 3½ inches; and

the unified casting, with the light source module, the driver and the reflector therein, are substantially contained within the second cavity of the standard junction box.

9. The compact recessed lighting system of claim 8, wherein the unified casting is directly attached to the standard junction box via the plurality of elements of the unified casting and the corresponding tabs of the standard junction box.

10. The compact recessed lighting system of claim 9, further comprising:

a first plurality of wires electrically coupled to the driver, wherein the first plurality of wires passes through the heat conducting closed rear face of the unified casting; and

a second plurality of wires that emerge from the standard junction box and that are to bring electricity from an electrical system of a building in which the recessed lighting system is to be installed,

wherein the first plurality of wires are connected to the second plurality of wires through a plurality of caps or a connector inside of the standard junction box.

11. The compact recessed lighting system of claim 9, wherein the plurality of elements of the unified casting and the corresponding tabs of the standard junction box facilitate use of at least one of screws, bolts, twist-and-lock connections and friction or tension clips to directly attach the unified casting to the standard junction box.

12. The compact recessed lighting system of claim 8, wherein the standard junction box is a fire rated junction box having an Underwriters Laboratories (UL) fire-rating of at least two hours.

13. The compact recessed lighting system of claim 1, wherein the reflector separates the driver from the light source module such that the reflector directs the light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system.

14. The compact recessed lighting system of claim 1, wherein:

the unified casting includes at least one rabbet proximate to the first cavity; and

the heat conducting closed rear face of the unified casting includes one or more mounting elements to receive and hold at least one of the light source module and the driver.

15. The compact recessed lighting system of claim 1, wherein the unified casting includes at least one twist-and-lock connector integrated in the unified casting.

16. The compact recessed lighting system of claim 15, further comprising:

a trim directly coupled to the unified casting, for covering a hole in a ceiling or wall of a building in which the compact recessed lighting system is placed, wherein the trim connects to the unified casting via the at least one twist-and-lock connector.

17. A compact recessed lighting system, comprising:

a light source module for emitting light;

a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;

a heat conducting unified casting with a closed rear face, a sidewall and an open front face wherein the sidewall is joined to the closed rear face at one end and defines the open front face of the unified casting at another end, wherein the sidewall defines a cavity that extends forward from the closed rear face to the open front face of the unified casting and outward to the sidewall, wherein the light source module and the driver are positioned inside and completely contained within the cavity of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting and sits behind a ceiling or a wall when the unified casting is installed in a hole in the ceiling or the wall; and

a reflector positioned inside the cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,

wherein the heat conducting unified casting significantly dissipates heat generated by the light source module during operation of the light source module.

18. The system of claim 17, wherein:

the light source module is a light emitting diode (LED) module;

the light source module is coupled to the unified casting using at least one of a resin, one or more clips, one or more bolts, one or more screws, and one or more clamps; and

the sidewall of the heat conducting unified casting has fins formed on its outside surface.

19. The compact recessed lighting system of claim 17, wherein:

the heat conducting unified casting includes a plurality of elements positioned on the unified casting so as to align with corresponding tabs of a standard-sized junction box.

20. The compact recessed lighting system of claim 17, wherein:

the heat conducting unified casting has at least a first dimension across the closed rear face that is less than 3½ inches and a second dimension along the sidewall, between the closed rear face and the open front face, that is less than 2 inches.

21. The compact recessed lighting system of claim 17, wherein:

the heat conducting unified casting includes a plurality of elements positioned on the unified casting so as to align with corresponding tabs of a standard-sized junction box;

the heat conducting unified casting has at least a first dimension across the closed rear face that is less than 3½ inches and a second dimension along the sidewall, between the closed rear face and the open front face, that is less than 2 inches; and

the lighting system further comprises a plurality of wires coupled to the driver and passing through the heat conducting unified casting.

**22**. A compact recessed lighting system, comprising:

a light source module for emitting light;

a driver for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;

a unified casting with a closed rear face, a sidewall and an open front face wherein the sidewall is joined to the closed rear face at one end and defines the open front face of the unified casting at another end, wherein the sidewall extends 360 degrees around a center axis of the unified casting to define a cavity that extends forward from the closed rear face to the open front face of the unified casting and outward to the sidewall, wherein the light source module and the driver are positioned inside the cavity of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting; and

a reflector positioned inside the cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,

wherein:

the light source module is a light emitting diode (LED) module;

the sidewall of the unified casting has fins formed on its outside surface; and

the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed.

**23**. The system of claim **22**, wherein:

the driver has a shape that allows installation of the driver within the unified casting and allows direct contact of the light source module to the unified casting.

**24**. The system of claim **23**, wherein:

the system further includes the second connector of the pair of complimentary keyed or interlocking connectors, coupled to the first connector of the pair of complimentary keyed or interlocking connectors;

a first end of the plurality of wires is coupled to the first connector of the pair of complimentary keyed or interlocking connectors, and a second end of the plurality of wires is coupled to a connector holder inside the cavity of the unified casting; and

the driver includes a corresponding connector that is complimentary to the connector holder inside the cavity of the unified casting, such that when the connector holder and the corresponding connector are engaged, electricity passes from the electrical system of the building to the driver.



**25**. The compact recessed lighting system of claim **22**, wherein:

the unified casting is heat conducting;

the unified casting includes a plurality of elements positioned on the unified casting so as to align with corresponding tabs of a standard-sized junction box; and

the sidewall has a first dimension between the closed rear face and the open front face of less than 2 inches.

**26**. A lighting system, comprising:

a substantially heat conducting unified casting forming a casting cavity having a front face and a rear heat conducting portion and having dimensions to fit inside a standard-sized junction box, the substantially heat conducting unified casting including a plurality of elements positioned on the casting so as to align with corresponding tabs of the standard-sized junction box;

a light source module, disposed in the casting cavity, to emit light, wherein the light source module is positioned in the casting cavity closer to the rear heat conducting portion than the front face of the substantially heat conducting unified casting;

a driver, disposed in the casting cavity, to power the light source module; and

a reflector, disposed in the casting cavity to cover the driver and to direct light produced by the light source module out of the front face,

wherein the substantially heat conducting unified casting significantly dissipates heat generated by the light source module during operation of the light source module.

**27**. The lighting system of claim **26**, wherein the heat conducting unified casting has a depth dimension of less than 2 inches and at least one of a width dimension and a length dimension of less than 3½ inches.

**28**. The lighting system of claim **26**, further comprising:

a plurality of wires coupled to the driver in the casting cavity and passing through the unified casting and outside the casting cavity,

wherein the plurality of wires passes through the rear heat conducting portion of the unified casting, and wherein the lighting system further comprises:

a first connector of a pair of complimentary keyed or interlocking connectors, coupled to a first end of the plurality of wires.

**29**. The lighting system of claim **26**, wherein:

the unified casting includes at least one rabbet proximate to the casting cavity;

the unified casting has a depth dimension of less than 2 inches and at least one of a width dimension and a length dimension of less than 3½ inches;

the unified casting has a closed rear face;

the closed rear face includes one or more mounting elements to receive and hold at least one of the light source module and the driver; and

the plurality of wires passes through the closed rear face of the unified casting.

**30**. The lighting system of claim **26**, further comprising an enclosure to substantially contain the unified casting, wherein the enclosure comprises one of:

the standard-sized junction box; and

a 4-8 inch recessed lighting fixture.

* * * * *