**23-1997**

# United States Court of Appeals
# For the Federal Circuit

**AMP PLUS, INC., dba ELCO LIGHTING,**

*Appellant,*

**v.**

**DMF, INC.**

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-01094*

**RESPONSE BRIEF OF APPELLEE DMF, INC.**

David W. Long
**ERGONIQ LLC**
8200 Greensboro Dr., Suite 900
McLean, VA 22101
(202) 847-6853

Ben M. Davidson
**DAVIDSON LAW GROUP, ALC**
4500 Park Granada Blvd, Suite 202
Calabasas, CA 91302
(818) 918-4622

Kevin B. Laurence
**LAURENCE & PHILLIPS IP LAW**
2200 Pennsylvania Ave. NW, 4th Flr E.
Washington DC 20037
(202) 558-6180

*Attorneys for Appellee DMF, Inc.*

December 12, 2023

**Claim 22 of U.S. Patent No. 9,964,266**

22. A compact recessed lighting system, comprising:
a light source module for emitting light;
**a driver** for powering the light source module to emit light, the driver including an electronic device to at least one of supply and regulate electrical energy to the light source module;
a unified casting with a closed rear face, a sidewall and an open front face wherein the sidewall is joined to the closed rear faced at one end and defines the open front face of the unified casting at another end, wherein the sidewall extends 360 degrees around a center axis of the unified casting to define a cavity that extends forward from the closed rear face to the open front face of the unified casting and outward to the sidewall, wherein the light source module and the driver are positioned inside the cavity of the unified casting such that the light source module is closer to the closed rear face of the unified casting than the open front face of the unified casting; and
a reflector positioned inside the cavity of the unified casting and coupled to and surrounding the light source module such that the reflector directs light produced by the light source module into an area surrounding the compact recessed lighting system while enclosing the driver from exposure to the area surrounding the compact recessed lighting system,
wherein:
the light source module is a light emitting diode (LED) module;
the sidewall of the unified casting has fins formed on its outside surface; and
the system further comprises a plurality of wires connected to **the driver** and connected to a first connector of a pair of complimentary keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary keyed or interlocking connectors, wherein the second connector **is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed**.

(emphasis added to disputed limitation).

## Certificate of Interest

Counsel for Appellee DMF, Inc. certifies the following:

**1. Represented Entities**. The full name of every Party represented by me. Fed. Cir. R. 47.4(a)(1)

- DMF, Inc.

**2. Real Party in Interest**. The name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me. Fed. Cir. R. 47.4(a)(2).

- Not applicable.

**3. Parent Corporations/Stockholders**. Parent corporations and publicly held companies that own 10% or more of stock in the party. Fed. Cir. R. 47.4(a)(3).

- Not applicable.

**4. Legal Representatives**. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case). Fed. Cir. R. 47.4(a)(4)

- ROPES & GRAY LLP: Scott A. McKeown

**5. Related Cases.** The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- *DMF, Inc. v. AMP Plus, Inc. dba Elco Lighting and Elco Lighting, Inc.*, Case No. 2:18-cv-07090 (C.D. Cal.).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

- None.

/s/ David W. Long

Dated: December 12, 2023

David W. Long
*Attorney for Appellee*
*DMF, Inc*

.

## Table of Contents


Claim 22 of U.S. Patent No. 9,964,266 .......... i

Certificate of Interest .......... ii

Table of Contents .......... iii

Table of Authorities .......... v

Table of Abbreviations .......... viii

Statement of Related Cases .......... 1

Jurisdictional Statement .......... 1

Statement of the Issues .......... 1

Statement of the Case .......... 2

Statement of Facts .......... 6

I. Technology Background .......... 6

A. The ‘266 Patent .......... 6

B. Imtra 2011 (Appx391-430) .......... 9

II. Procedural Posture .......... 11

A. Board’s Original Decision .......... 11

B. First Appeal To This Court .......... 13

C. Board’s Decision on Remand .......... 16

D. ELCO’s Notice of Appeal .......... 16

Summary of the Argument .......... 18

Argument .......... 19

III. Standard of Review .......... 19

A. ELCO's Defective Notice Of Appeal Requires Dismissal For Lack Of Appellate Jurisdiction ........................................................21

1. Legislative history of §142 notice of appeal............................21

2. ELCO failed to timely file the notice of appeal required to provide appellate jurisdiction of the Board's IPR decision ........................................................................26

B. Anticipation of Claim 22 Is Not At Issue In The IPR.........................29

C. Substantial evidence supports Board decision based on the arguments and evidence ELCO actually raised below........................32

D. ELCO Waived Its New Claim 22 Ground 2 Obviousness Argument It Seeks To Raise On Appeal............................................34

Conclusion ..................................................................................................37

# Table of Authorities

## Cases

*ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*,
51 F.4th 1365 (Fed. Cir. 2022) ....27

*AMP Plus, Inc. v. DMF, Inc.*, No. IPR2019-01094,
2020 WL 6811241 (PTAB Nov. 19, 2020) (hereinafter "First Board Decision") .3

*AMP Plus, Inc. v. DMF, Inc.*, Nos. 2021-1595, 2021-1636,
2022 WL 16844516 (Fed. Cir. Nov. 10, 2022) (hereinafter "First Appeal Decision") ....3

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
839 F.3d 1034 (Fed. Cir. 2016) (en banc) ....20

*Application of Castner*,
518 F.2d 1234 (CCPA 1975) ....23

*Application of Gruschwitz*,
320 F.2d 401 (CCPA 1963) ....22

*Application of LePage's Inc.*,
312 F.2d 455 (CCPA 1963) ....23

*Application of Schwarze*,
536 F.2d 1373 (CCPA 1976) ....23

*Application of Timmerbeil*,
320 F.2d 413 (CCPA 1963) ....22

*Bio-Rad Lab's, Inc. v. Int'l Trade Comm'n*,
996 F.3d 1301 (Fed. Cir. 2021) ....14

*Bowles v. Russell*,
551 U.S. 205 (2007) ....26

*Braun v. Dep't of Health and Human Services*,
983 F.3d 1295 (Fed. Cir. 2020) ....14

*Communications Test Design, Inc. v. Contec, LLC*,
952 F.3d 1356 (Fed. Cir. 2020) ....14

*Dickinson and Co. v. CR Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990) ....14

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ....19

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ....................................................................19

*Freytag v. Commissioner*,
501 U.S. 868 (1991)..........................................................................................6

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ....................................................................30

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) .............................................................. 6, 20, 36

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................................................................19

*In re Wesselman*,
127 F.2d 311 (CCPA 1942) ..........................................................................22

*Intergraph Corp. v. Intel Corp.*,
253 F.3d 695 (Fed. Cir. 2001) ......................................................................31

*Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. United Screw & Bolt Corp.*,
941 F.2d 466 (6th Cir. 1991) ........................................................................28

*JSAS Institute, Inc. v. Iancu*,
138 S. Ct. 1348 (2018).....................................................................................30

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) .............................................................. 20, 21

*Parus Holdings, Inc. v. Google LLC*,
70 F.4th 1365 (Fed. Cir. 2023) .............................................................. 21, 30

*R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*,
681 F.3d 1323 (Fed. Cir. 2012) ....................................................................27

*Rodriguez v. Dep't of Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021) .......................................................................14

**Statutes**

35 U.S.C. §142.......................................................................................... 21, 25, 28

35 U.S.C. §143............................................................................................ 1, 21, 24

35 U.S.C. §312(a)(3)..........................................................................................29

**Other Authorities**

*Patent Trial and Appeal Board Standard Operating Procedure 9* .........................36

Pub. L. 112-29, §7(c)(3) ....................................................................................24

Pub. L. 98-620, 98 STAT. 3335 (Nov. 8, 1984)....................................................24

U.S. Patent & Trademark Office, *Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions*, 77 Fed. Reg. 48612 (Aug. 14, 2012) .................................................25

U.S.C. §143 Editorial Notes on 1984 Pub. L. 98-620 ............................................24

**Rules**

Fed. Cir. R. 4(a) ..............................................................................................26

Fed. R. App. P. 15(a)(3)......................................................................................28

Fed. R. Civ. P. 84 ...............................................................................................27

**Regulations**

37 CFR §42.104(b)(5).........................................................................................34

37 CFR §90.2(a)(3)(ii) ............................................................... 1, 17, 21, 26

37 CFR 90.3(a)(1) ..............................................................................................17

## Table of Abbreviations

| | |
|---|---|
| '266 Patent | U.S. Patent No. 9,964,266 (the patent-in-suit) |
| Blue Brief | Appellant ELCO's opening/principal brief |
| Board | Patent, Trial and Appeal Board (PTAB) |
| DMF | Appellee/Patent Owner DMF, Inc. |
| DMF IPR Resp. | DMF patent owner's response in the IPR |
| DMF IPR Sur-Rep | DMF patent owner's sur-reply in the IPR |
| ELCO | Appellant/Petitioner AMP Plus dba Elco Lighting |
| ELCO IPR Pet. | ELCO's petition seeking IPR |
| ELCO IPR Reply | ELCO's reply in the IPR |
| First Appeal Decision | AMP Plus, Inc. v. DMF, Inc., Nos. 2021-1595, 2021-1636, 2022 WL 16844516 (Fed. Cir. Nov. 10, 2022) |
| First Board Decision | *AMP Plus, Inc. v. DMF, Inc.*, No. IPR2019-01094, 2020 WL 6811241 (PTAB Nov. 19, 2020) |
| Gifford | U.S. Patent No. 9,366,418 asserted prior art |
| Imtra 2007 | Imtra Marine Catalog dated 2007 asserted prior art |
| Imtra 2011 | Imtra Marine Catalog dated 2011 asserted prior art |
| IPR | Inter Partes Review |
| PTAB | Patent, Trial and Appeal Board |
| Remand Board Decision | Board decision on remand that is the subject of this appeal (Appx00001-000011) |

## Statement of Related Cases

Appellee DMF, Inc. ("DMF") agrees with Appellant AMP Plus, Inc., dba ELCO Lighting ("ELCO") statement of related cases.

## Jurisdictional Statement

Appellee DMF disagrees with Appellant ELCO's jurisdictional statement. The Court lacks appellate jurisdiction because ELCO failed to timely file a notice of appeal meeting all statutory and regulatory requirements, including the 37 CFR §90.2(a)(3)(ii) requirement that the "notice of the appeal must provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143."

## Statement of the Issues

**Issue 1**: Whether this appeal must be dismissed for lack of appellate jurisdiction where ELCO failed to timely file a notice of appeal meeting all statutory and regulatory requirements, including the 37 CFR §90.2(a)(3)(ii) requirement that a notice of appeal from an inter partes review decision must "provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143."

**Issue 2**: Whether ELCO can raise for the first time on appeal an argument that Claim 22 of the patent-in-suit is anticipated by asserted Imtra 2011 prior art where such anticipation of Claim 22 was not a patentability grounds identified in the IPR Petition and ELCO never raised such an argument to the Board.

**Issue 3**: Whether ELCO has shown under the substantial evidence standard of review that the Board erred in finding ELCO failed to carry its burden of proving that the Claim 22 Limitation [M] requirement that the claimed recessed light have an internal driver coupled to the high-voltage electrical system of a building would have been obvious based on low-voltage boat lights of the asserted Imtra 2011 prior art.

## Statement of the Case

This is an appeal by Appellant AMP Plus, Inc., d/b/a ELCO Lighting ("ELCO") from a decision by the Patent Trial and Appeal Board ("the Board") of the U.S. Patent & Trademark Office ("the Patent Office") in an *inter partes* review (IPR) that confirmed the patentability of Claim 22 of U.S. Patent No. 9,964,266 ("the '266 Patent") owned by Appellee DMF, Inc. ("DMF") following remand from this Court after a first appeal.

The '266 Patent concerns compact recessed light-emitting diode (LED) lighting systems designed to be coupled to high-voltage alternating current (*e.g.*, 120 VAC) from the electrical system of a building. The prior art at issue is a catalog of boat products from 2011 by Imtra Marine Lighting (the "Imtra 2011" catalog at Appx391-403) that included recessed LED boat lights designed to be coupled to low-voltage direct current (DC) from the battery of a boat.

On May 17, 2019, ELCO filed an IPR Petition raising three grounds challenging the patentability of several ′266 Patent claims based on Imtra 2011:

**Ground 1** Challenging Claim 17 and several other claims—but not Claim 22—as anticipated by Imtra 2011.

**Ground 2** Challenging Claim 22 and other claims as obvious based on Imtra 2011 and Imtra 2007.

**Ground 3** Challenging Claim 22 and other claims as obvious based on Imtra 2011, Imtra 2007 and a Gifford Patent.[1]

On November 19, 2020, the Board issued an original decision confirming the patentability of all challenged claims except Claim 17 (hereinafter "First Board Decision").[2]

On November 10, 2022, this Court issued a decision affirming the Board on all grounds except Claim 22 (hereinafter "First Appeal Decision").[3] Because the Board's decision was "silen[t] regarding the obviousness issue as applied to Claim 22," this Court vacated and remanded as to Claim 22 for the Board to "provide an explanation of its reasoning sufficient 'to enable judicial review and to avoid displacement of agency authority.'"[4]

---

[1] *See* IPR Petition at Appx77.

[2] *AMP Plus, Inc. v. DMF, Inc.*, No. IPR2019-01094, 2020 WL 6811241 (PTAB Nov. 19, 2020) (hereinafter "First Board Decision").

[3] *AMP Plus, Inc. v. DMF, Inc.*, Nos. 2021-1595, 2021-1636, 2022 WL 16844516 (Fed. Cir. Nov. 10, 2022) (hereinafter "First Appeal Decision").

[4] First Appeal Decision, 2022 WL 16844516, at *3.

On March 27, 2023, the Board issued its final decision on remand that again confirmed the patentability of Claim 22 over ELCO's Ground 2 and Ground 3 obviousness challenges (hereinafter "Remand Board Decision"). ELCO here seeks to appeal the Board's decision as to Ground 2, but not Ground 3.[5]

The Board's remand decision found that ELCO failed to present analysis or direct the Board's attention to evidence that the prior art taught the Claim 22 "Limitation [M]" requiring the claimed recessed light's driver to be coupled to the electrical system of a building:

> Petitioner [ELCO] **provides no analysis** of the portion of Limitation [M] that recites "coupl[ing] to electricity from an electrical system of a building in which the compact recessed lighting system is installed." ... Given opportunities, Petitioner side-stepped confronting the "installation in a building" issue. ... In view of Petitioner's **failure to direct us to evidence** sufficient to establish a person of ordinary skill in the art could have and would have installed the marine recessed lighting system disclose in Imtra 2011 in a building, we find Petitioner fails to show obviousness of claim 22 over the combination of Imtra 2011 and Imtra 2007 by a preponderance of the evidence.[6]

ELCO's opening brief in this appeal (hereinafter "Blue Br.") proves the point.

The only IPR briefing to the Board that ELCO cites in its appeal brief is the same <u>three sentences</u> (Appx124-125) that the Board (Appx7) found "provides no

---

[5] *See* Blue Br. at 5 ("The Board instituted trial on these two grounds [Ground 1 anticipation and Ground 2 obviousness], along with another ground [Ground 3 obviousness] <u>not at issue in this appeal</u>.") (emphasis added).

[6] Appx7-9.

analysis" of the key portions of Claim 22 Limitation [M], shown below (page break omitted, red underline of cited evidence):

> Imtra 2007, p. 8 ("fins" circled in red)
>
> **f. Limitation [M] – claim 22**
>
> | |
> |---|
> | the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed |
>
> Imtra 2011 discloses that the "fixture is equipped with an 18 awg Triplex cable tail for direct hook up to an AC J-box." (Imtra 2011, p. 6) The use of interlocking or key connectors (interlocking connectors) and junction boxes in connection with lighting fixtures were known to a POSITA. A POSITA would know that wire connections between the fixture and the power source can be made in a variety of ways, including a keyed output connector. (Bretschneider, ¶158-159)
>
> **3. The Imtra References Render Dependent Claims 2, 4-11,**

As the Board found, nothing in those three sentences about Imtra boat lights addresses the claimed driver being "coupled to electricity from an electrical system of a building ...."[7]

Given that clear deficiency, ELCO's appeal briefing here presents over 20 pages of new arguments not presented to the Board based almost exclusively on

[7] Board Remand Decision at Appx7-9.

evidence that ELCO failed to bring to the Board's attention. But this Court sits as a court of review for errors by the Board (not a court of first instance), and ELCO waived arguments it chose not to present to the Board before or after remand.[8]

In sum, the Court should either **(1)** dismiss this appeal for lack of appellate jurisdiction or **(2)** affirm the Board's patentability decision on Claim 22.

## Statement of Facts

DMF provides below a short statement of facts to supplement that stated in ELCO's opening brief.

### I. Technology Background

#### A. The '266 Patent

The '266 Patent specification explains that its recessed lighting system "provides a more compact and cost effective design while complying with all building and safety codes/regulations" and that the design accounts for "complying with all building and safety regulations."[9] The '266 Patent explains that, unlike prior recessed lights, the patented invention provides for a compact structure that not only fits into a traditional "can" housing used in buildings, but also has the flexibility to fit into a standard junction box (so the additional cost and complexity

[8] *In re Google Tech. Holdings LLC*, 980 F.3d 858, 864 (Fed. Cir. 2020)("The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance.") (quoting *Freytag v. Commissioner*, 501 U.S. 868, 895 (1991)).

[9] Appx162, 154.

of using a "can" housing can be avoided) "while still complying with all building and safety codes/regulations"—*i.e.*, the safety requirement to use a junction box in order to couple to the high-voltage 120VAC electrical system of a building.[10] This ability to be recessed within and mounted to the junction box is the subject of the "plurality of elements" limitation found in every claim at issue in the IPR except Claims 17 and 22—*e.g.*, holes in the recessed light's casting that align with mounting tabs of a standard junction box.

Figure 1 of the '266 Patent below has color shading added to show components of an embodiment of the invention. The single-piece *unified casting* (shaded black) houses the LED *light source module* (**3** in yellow) recessed within a standard-sized junction box (silver) above a ceiling. The *unified casting* has a *plurality of elements* (**27A**, **27B** in orange) with slots/holes that align with holes in the junction box tabs (**10A**, **10B** in red) and attached with screws (**25A**, **25B** in light-green). The *complementary-keyed connectors* (**23A**, **23B** in purple) are coupled by wires (**9B** in black/white) to the internal *driver* (**4** in green) on one end and coupled by wires (**9A** in black/white) to the high-voltage *electrical system of a building* on the other end:

---

[10] Appx154, 162-165.




FIG. 1

The '266 Patent specification explains that the device's internal *driver* 4 receives building mains voltage (120 VAC or 277VAC) from the electrical system of a building:

- "driver 4 receives an input from the electrical system of the building or structure in which the recessed lighting system 1 is installed and drops the voltage to an acceptable level for the light source module 3 (e.g., from 120-240V AC to 36v-48V DC)"

- "electricity may pass from the electrical system of the building or structure to the driver 4."[11]

[11] Appx163; *see also* Appx6208-6209, 6178-6179.

The '266 Patent file history similarly explained that the *driver* is coupled to "building wiring carrying the AC 'mains' voltage":

- "In the single-housing solution provided by the Inventor Danesh's innovative assembly, building wiring carrying the AC 'mains' voltage may be coupled to the driver …"[12]

### B. Imtra 2011 (Appx391-430)

Imtra 2011 discloses two different classes of recessed LED boat lights:[13]

- Three families of small "PowerLEDs" (Ventura, Portland and Hatteras) designed with internal drivers to receive low-voltage DC from a boat's battery

- Two larger boat lights (Sardinia and Cyprus) designed with internal drivers to receive high-voltage 120 VAC available in some boats, such as yachts.

The low-voltage DC PowerLEDs are shown below:




These devices have a single-piece housing (in black above) that ELCO alleged to be the "unified casting" required in all challenged patent claims.

In contrast, the two larger "120 VAC LED DOWNLIGHTS" Sardinia and Cyprus have a different design, as shown below:

---

[12] Appx2764-2767; *see also* Appx6175-6176.

[13] *See* Appx6316-6336.







Unlike the low-voltage DC PowerLEDs that had a single-piece housing, both parties' experts agreed that these 120 VAC Sardinia/Cyprus products have a multi-piece structure of a black heatsink on top of a silver reflector.[14] So ELCO did not allege that these 120 VAC Sardinia/Cyprus products meet the claimed *unified casting* limitation, which must be made of a single piece.[15]

These and other differences are important here. ELCO relies on the low-voltage DC PowerLEDs—not the 120 VAC Sardinia/Cyprus products—as satisfying every limitation of Claim 22 except for the Limitation [M] requirement of coupling the internal driver to the electrical system of a building. Rather, for

---

[14] *See* Appx6319-6320 (Benya); Appx5150-5151 (Bretschneider); Appx8342.

[15] ELCO did not contest DMF's proposed construction of the *unified casting* required in all claims as being "a structure formed as a single-part of heat-conducting material that is a one-piece structure, rather than connecting together separate structures."Appx4382; Appx8342.

that limitation, ELCO relies on the 120 VAC Sardinia/Cyprus products that—unlike the low-voltage DC products—have "built in AC to DC drive electronics" and come with "an 18 awg Triplex cable tail, for direct hook-up to an AC J-box":[16]

> **Convenient Power Hook-Up**
>
> Sardinia & Cyprus' built in AC to DC drive electronics relinquish the need for complicated, expensive, and bulky remote drivers, converters, or transformers. Each fixture is equipped with an 18 awg Triplex cable tail for direct hook-up to an AC J-box.

## II. Procedural Posture

### A. Board's Original Decision

A *significant* focus in the IPR was whether the '266 Patent claims were directed to building lights that received high-voltage building mains power (as DMF argued), or also could include boat lights receiving a boat's low-voltage battery power (as ELCO argued).[17] The Board explained this dispute, for example, when construing the patent claims:

> The construction of "standard junction box" impacts whether the claimed compact recessed lighting system is limited to "building main power" as a power source. Patent Owner argues that the term is so

---

[16] Appx396.

[17] *See, e.g.*, First Board Decision, 2020 WL 6811241, at *10-15 (Board discussion of *driver* limitation); Appx97-98 (ELCO IPR Petition); Appx3889-3891, 3925-3926 (DMF IPR Response); Appx6906-6907, 6909, 6911, 6917 (ELCO IPR Reply); Appx7956-7957, 7958-7959 (DMF IPR Sur-Reply).

> limited (Response 36-37), thus avoiding prior art that reads on marine lighting systems that arguably do not use building main power as a power source. Petitioner, asserting the marine lighting systems as prior art, argues that Patent Owner's proposed construction is too narrow.[18]

ELCO intentionally did not assert that Claim 22 was anticipated by the low-voltage DC boat lights in Imtra 2011. Rather, ELCO argued that, because Claim 22 includes a limitation specifically directed to installation in a *building*, other claims without that limitation were broad enough to cover low-voltage boat lights:

> Moreover, under the doctrine of claim differentiation, there is a presumption that claim 1 (and many of its dependents) do not require installation of the recessed lighting system in a building. **Claims … 22** specifically recite a building … .[19]

DMF argued that, in the context of the '266 Patent, the *driver* in "all challenged claims"—not just Claim 22—must be designed to receive building mains voltage.[20]

The Board agreed with the parties that at least Claim 22 was directed to lighting devices that can be coupled to the electrical system of a building:

> In contrast, we note that claims … 22 … recite an electrical system *of a building*, indicating that the inventors added the requirement of a building where they chose to limit the claims to that environment. [21]

***

---

[18] First Board Decision, 2020 WL 6811241, at *6; *see also id.* at *7-9.

[19] Appx6902 (emphasis added).

[20] *See* Appx4372-4373, 4379-4381, Appx7957-7959, 8458.

[21] First Board Decision, 2020 WL 6811241, at *6 n.8 (italics emphasis in original, underline emphasis added).

> Again, as indicated in claims … 22, to the extent the inventors wished to limit their claimed lighting system to those connected to the electrical system of a building, they knew how to expressly do so, and indeed chose to do so only in a small subset of its claims.[22]
>
> ***
>
> We contrast the absence of **"building main power"** in independent claims 1 and 26 with the express recitation of a connection to the electrical system of a building in claims … 22.[23]
>
> ***
>
> Where desired, the Applicant drafted the claims to limit the recessed lighting system to one placed or installed in a building. *See, e.g.*, Ex. 1001, 11:4-5, 11:35-43 (Claim 22 requires electrical connection between the driver and "electricity from an electrical system of a building.")[24]

The Board's decision ultimately found that ELCO failed to show that any challenged patent claim was unpatentable as anticipated (Ground 1) or obvious (Grounds 2 and 3), except the Board found Claim 17 was anticipated by Imtra 2011.[25]

### B. First Appeal To This Court

ELCO appealed the Board's decision. ELCO's opening brief argued that the Board "failed to analyze" or address Claim 22 "at all" or "whatsoever," but had "omitted Claim 22 entirely."[26] ELCO therefore presented no substantive argument

---

[22] *Id*. at *8 (emphasis added).

[23] *Id*. at *9 (emphasis added).

[24] *Id*. at *11 (emphasis added).

[25] First Board Decision, 2020 WL 6811241, at *19.

[26] Appx8508, 8527, 8530 and 8539.

as to Claim 22 Limitation [M] requirement that the driver to be coupled to the electrical system of a building.

DMF's responsive brief, therefore, explained that the parties and Board had addressed that portion of Limitation [M] ignored by ELCO.[27] ELCO thus had waived any arguments based thereon.[28]

ELCO's Reply sought to avoid waiver by arguing that "ELCO had no reason to know DMF believed the evidence presented below regarding Limitation [M] was in any way insufficient."[29] So ELCO's reply made brand new substantive arguments—not raised to the Board—that it would have been obvious to modify an

---

[27] Appx8859-8862.

[28] Appx8861-8867 (quoting *Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1296 (Fed. Cir. 2021) ("issues not addressed in the argument section of a party's opening brief are considered waived"); *Bio-Rad Lab's, Inc. v. Int'l Trade Comm'n*, 996 F.3d 1301, 1315 (Fed. Cir. 2021) ("Ordinarily, an appellant waives issues or arguments not properly raised in its opening brief."); *Becton Dickinson and Co. v. CR Bard, Inc.*, 922 F.2d 792, 800-801 (Fed. Cir. 1990) (Waiver applies where "[t]he decision on what issues to raise appears to have been a knowing tactical decision by [the appellant]."); *Braun v. Dep't of Health and Human Services*, 983 F.3d 1295, 1305 (Fed. Cir. 2020) (waiver provides "fairness to appellees" who otherwise are denied an opportunity to respond to arguments not raised or developed until the reply brief); *Communications Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1363 n.4 (Fed. Cir. 2020) (waiver where party did not raise issue in opening brief, but raised it for the first time in the reply brief)).

[29] Appx8754-8757.

Imtra 2011 low-voltage DC product so its *driver* may be coupled to the electrical system of a building as in Claim 22 Limitation [M].[30]

DMF filed a motion to strike ELCO's new appeal reply arguments. DMF explained that DMF had in fact argued to the Board that Claim 22 would not have been obvious because its *driver* must receive building mains voltage, not low-voltage DC from a boat battery as ELCO argued for the Imtra products.[31]

The merits panel acknowledged DMF's argument that ELCO failed to address Limitation [M], but ruled remand was necessary where the Board was silent as to the basis for its Claim 22 patentability determination:

> DMF argues that the reason the Board determined that claim 22 was not unpatentable is that ELCO presented insufficient evidence that the prior art disclosed the "electrical system of a building" limitation of Claim 22. The Board, however, did not rely on that argument in its obviousness determination, and that argument therefore cannot serve as a basis for upholding the Board's decision. ...
>
> In light of the Board's silence regarding the obviousness issue as applied to claim 22, it appears that the Board may have simply overlooked that claim when determining whether the challenged claims were obvious in view of Grounds 2 and 3. ...
>
> Regardless of the reason for the omission, the Board must rule on the obviousness issue as to claim 22 and must provide an explanation of its reasoning sufficient to enable judicial review and to avoid judicial displacement of agency authority. It has not done so with respect to

[30] Appx8751-8752, 8757-8760.

[31] Appx8822-8823 (citing DMF IPR briefing at Appx4372-4373, Appx4379-4381, Appx4391, 4393-4304, 4398, Appx7957-7959, 7974-7975)); *see also* Appx8978-8979, 8982-8986).

> claim 22. Accordingly, we vacate the Board's decision that claim 22 is not unpatentable and remand for the Board to address the parties' arguments regarding the patentability of claim 22.[32]

### C. Board's Decision on Remand

On remand, the Board held a teleconference with the parties to discuss how to proceed in which ELCO had the opportunity to request additional briefing or oral argument to raise the new arguments ELCO tried to raise in the appeal. But ELCO chose not to seek any additional briefing or argument before the Board, resting on the record as it stood prior to the appeal.[33] Unsurprisingly—and consistent with ELCO's admission in the prior appeal briefing—the Board found that ELCO failed to provide analysis or direct the Board's attention to evidence that the Claim 22 Limitation [M] requirement that the driver is coupled to the electrical system of a building would have been obvious.[34]

### D. ELCO's Notice of Appeal

On May 30, 2023, ELCO filed a Notice of Appeal (Fed. Cir. Dkt 1-2)[35] from the Board's remand decision. ELCO's Notice of Appeal was based on Federal Circuit FORM 5 for generic appeals from any agency, rather than a notice of

[32] First Appeal Decision, 2022 WL 16844516, at *3.

[33] Appx3.

[34] Appx7-9.

[35] Appx9065-9066.

appeal that complies with the unique requirements for appeals from Board IPR decisions. As a result, ELCO's notice of appeal did not provide any information about the specific issues ELCO intends to raise on appeal as required by Patent Office regulations.[36]

On June 23, 2023, DMF filed its docketing statement (Fed. Cir. Dkt 9 at 2). DMF stated that the appeal issues include "Whether the Notice of Appeal by Appellant AMP Plus, Inc. was effective where it failed to comply with 37 CFR 90.2(a)(3)(ii)."

On June 28, 2023. ELCO filed with the Board "Petitioner's Corrected Notice of Appeal" (Appx009068), to identify reasons for the appeal. But this filing was 94 days after the Board's March 27 decision and, therefore, untimely because not made within 63 days after the Board's decision.[37]

[36] *See* 37 CFR 90.2(a)(3)(ii) ("notice of the appeal must provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143").

[37] *See* 35 U.S.C. §142 (must file "written notice of appeal ... within such time after the date of the decision from which the appeal is taken as the Director prescribes"); 37 CFR 90.3(a)(1) (notice of appeal must be "no later than sixty-three (63) days after the date of the final Board decision").

## Summary of the Argument

This appeal must be dismissed for lack of appellate jurisdiction, because ELCO failed to provide a timely notice of appeal describing its reasons for appeal as required by 37 CFR 90.2(a)(3)(ii).

If the appeal is not dismissed on jurisdictional grounds, then the Court should affirm the Board's finding that ELCO failed to carry its burden to prove that Claim 22 is unpatentable in view of the Imtra 2011 asserted prior art for several reasons.

**First**, ELCO's new argument here that the Court should find Claim 22 anticipated by Imtra 2011 must be rejected. ELCO did not raise anticipation of Claim 22 as a patentability ground in its Petition and ELCO never made such an argument to the Board.

**Second**, ELCO's briefing before the Board wholly failed to address whether the Claim 22 Limitation [M] requirement that the driver be coupled to the electrical system of a building would have been obvious based on the Imtra 2011 asserted prior art. The substantial evidence standard of review requires deferring to the Board's determination that ELCO failed to present argument and direct the Board's attention to evidence on that dispositive issue.

**Third**, the remainder of ELCO's arguments on appeal are new arguments not raised to the Board below and are based on evidence to which ELCO failed to bring to the attention of the Board. ELCO thus waived such arguments.

**Argument**

## III. Standard of Review

This Court "review[s] the PTAB's factual findings for substantial evidence and its legal conclusions de novo."[38] "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence, meaning that [i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39] The appellant does not carry its burden by arguing only favorable evidence while ignoring unfavorable evidence underlying the PTAB's decision:

> If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.[40]

This Court's substantial evidence review precludes considering new factual arguments not raised below:

---

[38] *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1372 (Fed. Cir. 2019).

[39] *Fox Factory*, 944 F.3d at 1372 (quoting *In re NuVasive, Inc.*, 842 F.3d 1376, 1379-80 (Fed. Cir. 2016)).

[40] *Fox Factory* at 1372 (citing *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018)).

> [A]s an appellate court, it is beyond our role to reweigh the evidence or consider what the record might have supported, or investigate potential arguments that were not meaningfully raised. Our review is limited to whether fact findings made and challenged on appeal are supported by substantial evidence in the record, and if so, whether those fact findings support the legal conclusion of obviousness.[41]

Thus, "[a]ny argument not raised to the Board is forfeited, and [this Court] declines to consider it for the first time on appeal."[42] Put another way: This Court reviews Board decisions for error, and the Board could not have erred by not considering an argument ELCO did not raise.[43]

This also applies to vague or undeveloped arguments. This Court recently explained that the Board should "not have to decode a petition to locate additional arguments beyond the ones clearly made."[44] Similarly, this Court recently admonished that, because "the Board should not be forced to 'play arch[a]eologist with the record,'" a petitioner's "burden of production cannot be met simply by throwing mountains of evidence at the Board without explanation or identification

---

[41] *Apple v. Samsung*, 839 F.3d 1034, 1062 (Fed. Cir. 2016) (en banc) (emphasis added).

[42] *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1378 (Fed. Cir. 2023) .

[43] *See Google*, 980 F.3d at 863 ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances.").

[44] *Netflix*, 84 F.4th at 1376-78.

of the relevant portions of that evidence."[45] Thus, this Court's substantial evidence review gives deference to the Board's discretion in determining the sufficiency of arguments and citations to evidence raised in the IPR.[46]

### A. ELCO's Defective Notice Of Appeal Requires Dismissal For Lack Of Appellate Jurisdiction

This may present an issue of first impression of the sufficiency of a notice of appeal from a Board's IPR decision where the Patent Office Director has a statutory right to intervene and has promulgated regulations requiring specificity in notices of such appeals to protect that right.[47] The legislative history of 35 U.S.C. §§142, 143 is instructive.

#### 1. Legislative history of §142 notice of appeal

Prior to 1984, §142 required an appellant to give notice to the Patent Office Commissioner of the "reasons of appeal", stating:

> When an appeal is taken to the United States Court of Customs and Patent Appeals, the appellant shall give notice thereof to the

---

[45] *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1371-73 (Fed. Cir. 2023).

[46] *Netflix*, 84 F.4th at 1377 ("The Board is entitled to discretion in how it interprets petitions.") (collecting cases).

[47] 35 U.S.C. §143 ("The Director shall have the right to intervene in an appeal from a decision entered by the Patent Trial and Appeal Board in a derivation proceeding under section 135 or in an inter partes or post-grant review under chapter 31 or 32 ..."); 37 CFR 90.2(a)(3)(ii) ("In appeals arising out of an inter partes review ... notice of the appeal must provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143 ...").

> Commissioner, and shall file in the Patent and Trademark Office his reasons of appeal, specifically set forth in writing, within such time after the date of the decision appealed from, not less than sixty days, as the Commissioner appoints.

This Court's predecessor, the U.S. Court of Customs and Patent Appeals (CCPA) thus would dismiss on jurisdictional grounds appeals (or portions thereof) from the PTO that failed to provide sufficient notice under §142 of the reasons for appeal.[48]

But there was concern that providing the PTO with notice of reasons for appeal was no longer necessary where the PTO was a party to the appeal and would review the appellant's brief detailing the appealed issues before the PTO was required to prepare and file its responsive appellee's brief. Judge Rich's concurrence in the CCPA's 1963 *LePage* decision provided a thorough analysis of the history of the provision—dating back to the 1800's—and concluded that statutory amendment was necessary because "[a] century and more ago the reasons of appeal had an informative function which no longer exists":

> A century and more ago the reasons of appeal had an informative function which no longer exists, having been replaced by better means of communication. ***
>
> Today the whole proceeding is different. .... When an appeal is taken to this court, the appellant files his notice, gets the Patent Office to

[48] *See, e.g.*, *Application of Gruschwitz*, 320 F.2d 401, 402-404 (CCPA 1963) (dismissing appeal where reasons for appeal were "nothing more than broad allegations that the board erred"); *Application of Timmerbeil*, 320 F.2d 413, 414 (CCPA 1963) (dismissing appeal because "the reasons of appeal are merely broad allegations that the board erred"); *see also In re Wesselman*, 127 F.2d 311, 990 (CCPA 1942) (applying similar language from prior statute 35 USC §60).

> deliver his record to the court, files his petition and the court clerk has the record printed. Thereafter the appellant files his printed brief containing his full argument as to why the Patent Office erred. ... Only after all this has been done does the Solicitor for the Patent Office take up the case for consideration and the writing of appellee's brief. He has no need whatever for reasons of appeal at this stage.
>
> The only reason to look into the reasons of appeal after receipt of the appellant's brief is to look for trouble. And that is all too frequently done. ***
>
> Conditions having changed and the statute having become obsolete, what is primarily needed is statutory amendment and modernization.[49]

Given Judge Rich's concerns in *LePage*, some (but not all) later CCPA decisions sought to temper the rule with a "common sense" approach to find an appellant's notice of reasons for appeal sufficient where the PTO solicitor on appeal "was not misled by appellant's reasons of appeal in preparing the Commissioner's case" and "the solicitor's brief lucidly discusses and argues" the issues on appeal.[50]

In 1984, Congress finally heeded Judge Rich's call for a statutory amendment by removing from §142 the language that "the appellant shall give

[49] *Application of LePage's Inc*., 312 F.2d 455, 469-470 (CCPA 1963) (Rich, J., concurring) (dismissing appeal from the Trademark Trial and Appeal Board for "fail[ing] to indicate any reasons of appeal whatsoever").

[50] *Application of Castner*, 518 F.2d 1234, 1237-1238 (CCPA 1975) (acknowledging equal number of decisions going either way on the issue of specificity in an appellant's notice of reasons for appeal); *accord Application of Schwarze*, 536 F.2d 1373, 1376-77 (CCPA 1976) ("the solicitor in the instant case has not alleged that he has been misled by appellants' reason of appeal in preparing the Commissioner's case before us, and the solicitor's brief lucidly discusses and argues" the issues on appeal).

notice thereof to the Commissioner, and shall file in the Patent and Trademark Office his reasons of appeal, specifically set forth in writing, ....”[51]

Significant statutory changes decades later again required that, in specific circumstances, the notice of appeal must again serve the *informative function* that gives the Director notice of issues to be raised in an appeal. Specifically, in 2011, the America Invents Act (AIA) created inter partes review (IPR) proceedings where adversarial parties—not the Patent Office—would be the appellee on appeal. Rather than the Patent Office always being a party in an appeal of a Board's IPR decision, the AIA gave the Patent Office the right to choose to participate on a case-by-case basis. AIA amended 35 U.S.C. §143 so that the Director has “the right to intervene in an appeal from a decision entered by the Patent Trial and Appeal Board ... in an inter partes ... review ....”[52]

But that right is meaningless if the Patent Office cannot make a timely, informed decision whether to intervene in any given case: The notice of appeal once again must have an *informative function*. Therefore, the Patent Office regulations implementing the AIA included revisions to 37 CFR § 90.2 that protect the Director's right to intervene under §143, the Patent Office explaining:

[51] *See* U.S.C. §143 Editorial Notes on 1984 Pub. L. 98-620; *see* Pub. L. 98-620, 98 STAT. 3335, 3363 (Nov. 8, 1984) (revising 35 U.S.C. §143)

[52] Pub. L. 112-29, §7(c)(3).

> Section 90.2 further adds provisions associated with judicial review of Board decisions inter partes reviews, post-grant reviews, covered business method patent reviews, and derivation proceedings. Section 90.2 requires parties filing a notice of appeal in such proceedings to provide **sufficient information (such as a statement of the issues to be raised in the appeal)** to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143. The Office believes that such a requirement imposes no additional burden on the party filing the notice, other than filing a copy of its brief statement of the issues, as it must provide a brief statement of the issues to the Federal Circuit in its docketing statement (see Fed. Cir. Form 26) and again in its brief (see Fed. Cir. R. 28(a)(5)). The requirement, therefore, merely requires parties to provide similar information to the Office at a slightly earlier stage in the proceedings.[53]

The Patent Office indicated that this notice requirement was authorized by, and an interpretation of, the AIA statute, stating:

> This final rule also revised the rules of practice to consolidate the procedure for appeal of a decision by the Board and to require that a copy of the notice of appeal ... be provided to the Board. These changes involve rules of agency practice, standards and procedure and/or interpretive rules. Moreover, sections 6 and 18 of the AIA require the Director to prescribe regulations for implementing the new trials.[54]

In sum, this Court has jurisdiction to review Board IPR decisions under 35 U.S.C. §142 only if a party "file[s] in the Patent and Trademark Office [PTO] a written notice of appeal ... within such time after the date of the decision from

---

[53] U.S. Patent & Trademark Office, *Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions*, 77 Fed. Reg. 48612, 48626 (Aug. 14, 2012) (emphasis added)

[54] 77 Fed. Reg. at 48650.

which the appeal is taken as the Director prescribes." Patent Office regulations 37 CFR §§ 90.3(a)(1) and 90.2(a)(3)(ii) require that, "no later than sixty-three (63) days after the date of the final Board decision," a notice of appeal must be filed that "provide[s] sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143," which the PTO explained would be "a statement of the issues to be raised in the appeal."[55]

#### 2. ELCO failed to timely file the notice of appeal required to provide appellate jurisdiction of the Board's IPR decision

ELCO failed to timely file the notice of appeal required to provide this court with appellate jurisdiction to review the Board's IPR remand decision.[56]

**First**, ELCO's Notice of Appeal (Fed. Cir. Dkt 1-2; Appx9065-9066) filed May 30, 2023 did not provide a statement of the issues to be raised on appeal or otherwise "provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143" as required by 37 CFR 90.2(a)(3)(ii). ELCO's notice of appeal merely apprised the

---

[55] U.S. Patent & Trademark Office, *Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions*, 77 Fed. Reg., 48612, 48626 (Aug. 14, 2012)

[56] *See Bowles v. Russell*, 551 U.S. 205, 206 (2007)("the time limits for filing a notice of appeal are jurisdictional in nature."); *Cf.* Fed. Cir. R. 4(a) "Appeal as of Right – Untimely Notice" ("This court cannot waive or extend the statutory deadlines for the filing of a notice of appeal or petition for review.").

Patent Office that ELCO would challenge the Board's IPR decision, which is true in all Board appeals and provides no insight into the specific issues to be raised in this particular appeal. This is not a dispute about (or require deciding) whether the degree of the disclosure of appeal issues was sufficient, because there was no disclosure here. The sufficiency of a notice of appeal should be considered liberally to avoid putting form over substance.[57] But the problem here is ELCO made not attempt whatsoever to give notice of what issues it would raise on appeal.

**Second**, ELCO's use of Federal Circuit Form 5 for general appeals from a decision by any agency does not excuse ELCO's failure to comply with the specific requirements for appeals from IPR Board decisions. In *R&L Carriers*, this Court held that use of a sample complaint provided in an appendix to the Federal Rules of Civil Procedure was sufficient for pleading direct infringement (but not indirect infringement) because Rule 84 expressly "state[d] that 'the forms in the Appendix suffice under the rules and illustrate the simplicity and the brevity that these rules contemplate.'"[58]

---

[57] *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 51 F.4th 1365, 1373 (Fed. Cir. 2022).

[58] *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.),* 681 F.3d 1323, 1334 (Fed. Cir. 2012)(quoting Fed. R. Civ. P. 84, abrogated Dec. 1, 2015).

The Federal Rules of Appellate Procedure, by contrast, do not include an analogous rule but merely provide that "Form 3 in the Appendix of Forms is a suggested form of a petition for review."[59] And this Court, in publishing FRAP 15 and Form 5, provides only that "Form 5 is available for a petition for review to this court,"[60] not that it suffices for every appeal from any decision by any agency.

As the Sixth Circuit cautioned in reviewing a prior version of the notice of appeal in Form 1, which only applied to appeals involving two parties, "We cannot overemphasize the need for appellants in actions involving three or more parties to look beyond this form for guidance in drafting a notice of appeal."[61]

Complying with the Patent Office's notice of appeal requirements is particularly important here where this specific notice of appeal **(1)** falls squarely within the province of a particular administrative agency—the Patent Office—and its regulations, not the judiciary and its judicially-created forms;[62] and **(2)** concerns

---

[59] Fed. R. App. P. 15(a)(3).

[60] https://cafc.uscourts.gov/wp-content/uploads/RulesProceduresAndForms/FederalCircuitRules/FederalCircuitRulesofPractice.pdf at 39 n. †.

[61] *Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. United Screw & Bolt Corp*., 941 F.2d 466, 470 (6th Cir. 1991).

[62] *See* 35 U.S.C. §142 ("the appellant shall file ... a written notice of appeal directed to the Director, within such time after the date of the decision from which the appeal is taken as the Director prescribes, but in no case less than 60 days after that date.") (emphasis added).

this particular administrative agency's rules for protecting its unique statutory rights—*i.e.*, the Patent Office rules require the notice of appeal from a Board's IPR decision to timely provide sufficient information about the appeal issues in order to protect the Director's unique §143 statutory right to decide whether to intervene in that appeal.

**Third**, ELCO's "corrected" notice of appeal (Appx9067) of June 28, 2023 was filed 94 days after the Board's IPR decision, well past the 63-day due date of 37 CFR 90.3(a)(1). So it provides not basis for appellate jurisdiction.

Accordingly, this appeal must be dismissed, because ELCO failed to file the required notice of appeal that is necessary for this Court to have appellate jurisdiction to review the Board's IPR decision.

### B. Anticipation of Claim 22 Is Not At Issue In The IPR

ELCO's lead argument on appeal (Blue Br. at 13-14)—that the Court should hold Claim 22 anticipated—lacks merit.

**First**, ELCO's IPR Petition does not raise anticipation as a grounds for unpatentability of Claim 22.[63] The IPR statute requires the Petition to identify "in writing and with particularity ... the grounds on which the challenge to each claim

[63] *See* ELCO Petition at Appx77, 96 (Ground 1 is only anticipation challenge and does not include Claim 22).

is based."[64] The Supreme Court explained that "the statute tells us that the petitioner's contentions ... define the scope of the litigation all the way from institution through to conclusion."[65] The Petition grounds are controlling and ELCO cannot now raise "an entirely new rationale" that Claim 22 is anticipated.[66]

**Second**, ELCO never argued to the Board that Claim 22 was anticipated: either before or after remand from the first appeal. Indeed, if the first appeal decision actually held that Imtra 2011 "disclose[s] all limitations of the challenged claims except for the 'plurality of elements' limitation" as ELCO now argues here (Blue Br. at 14), then ELCO should have promptly raised that argument with the Board at the outset of the remand process when provided the opportunity to do so.[67] The argument is waived and cannot be considered for the first time in this appeal.

**Third**, ELCO's law-of-the-case argument—that the Board and this Court held all Claim 22 limitations were disclosed by Imtra—is absurd. ELCO relies on

---

[64] 35 U.S.C. §312(a)(3).

[65] *JSAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1356-57 (2018).

[66] *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330-1331 (Fed. Cir. 2019).

[67] *See Parus Holdings*, 70 F. 4th at 1372-73 (party that failed to clearly advance arguments in its brief and then "chose not to use the avenues available to it" to seek further briefing failed to show error by the Board in rejecting its argument and evidence).

this Court's summary statement in the factual background of the decision (not its holding) that "the Board found that Imtra 2011 disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation," where this Court cited to the anticipation portion of the Board's decision about the "challenged claim[s]" as anticipated.[68] In that part of the analysis, the Board was not asked to, and did not, breath a word about whether Claim 22 was anticipated. This Court expressly stated so: "ELCO challenged claim 22 only in Grounds 2 and 3, so the Board did not determine whether Imtra 2011 anticipated claim 22 of the '266 patent."[69]

The Board's anticipation decision simply did not purport to resolve any issue as to Claim 22, so law of the case does not apply here.[70] Indeed, this Court's decision recognized the Board's express distinction between Claim 22 and Claim 17 that was found anticipated: "To be sure, the Board referred to claim 22 in its

[68] First Appeal Decision, 2022 WL 16844516, at *2 (citing First IPR Decision, 2020 WL 6811241, at *17).

[69] First Appeal Decision, 2022 WL 16844516, at *2.

[70] *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed. Cir. 2001)("The doctrine of law of the case generally bars retrial of issues that were previously resolved.")

claim construction analysis, where the Board explained that claim 22 is limited to lighting systems that are used in buildings."[71]

### C. Substantial evidence supports Board decision based on the arguments and evidence ELCO actually raised below

The sum total of ELCO's argument and evidence as to Claim 22 Limitation [M] was in the three sentences of ELCO's Petition that was expressly quoted and considered by the Board's remand decision, repeated below:[72]

[71] First Appeal Decision, 2022 WL 16844516, at *3 (citing First Board Decision, 2020 WL 6811241, at *6n.8, *8-9, *11).

[72] Board Remand Decision at Appx7 (quoting Appx124-125),.

> Imtra 2007, p. 8 ("fins" circled in red)
>
> **f. Limitation [M] – claim 22**
>
> the system further comprises a plurality of wires connected to the driver and connected to a first connector of a pair of complimentary keyed or interlocking connectors, such that in operation the first connector is coupled to a second connector of the pair of complimentary keyed or interlocking connectors, wherein the second connector is coupled to electricity from an electrical system of a building in which the compact recessed lighting system is installed
>
> Imtra 2011 discloses that the "fixture is equipped with an 18 awg Triplex cable tail for direct hook up to an AC J-box." (Imtra 2011, p. 6) The use of interlocking or key connectors (interlocking connectors) and junction boxes in connection with lighting fixtures were known to a POSITA. A POSITA would know that wire connections between the fixture and the power source can be made in a variety of ways, including a keyed output connector. (Bretschneider, ¶158-159)
>
> **3. The Imtra References Render Dependent Claims 2, 4-11,**

The cited evidence in those three sentences "Imtra 2011, p. 6" (Appx396) concerns only the large Sardinia/Cyprus boat lights with drivers designed to be coupled to high-voltage 120 VAC, not the Imtra 2011 catalog's smaller boat lights (*e.g.*, Hatteras product at Appx402-403) on which ELCO relied for the other Claim 22 limitations. These smaller boat lights have drivers designed to be coupled to low-voltage DC from a boat's battery. Those three-sentences say nothing about modifying the driver in the small low-voltage DC product to receive high-voltage 120 VAC like the large Sardinia/Cyprus boat lights relied on by ELCO in its three

sentence argument about this limitation.[73] Indeed, those sentences say nothing about the driver being designed to be coupled to the electrical system of a building.

As discussed, this Court's substantial evidence review gives deference to the Board's discretion to determine the sufficiency of ELCO's arguments and evidence. In these circumstances, substantial evidence supports the Board's finding (Appx7-9) that ELCO failed to present argument and evidence that Claim 22 Limitation [M] requirement of coupling to the electrical system of a building would have been obvious based on Imtra 2011. The Decision should be affirmed.

### D. ELCO Waived Its New Claim 22 Ground 2 Obviousness Argument It Seeks To Raise On Appeal

Almost all of ELCO's opening brief on appeal concerns new arguments and evidence that ELCO did not present to the Board. Specifically, the only evidentiary citations ELCO makes here that ELCO ever directed to the Board's attention in any way for *any reason* (Claim 22 or otherwise) were:

- Imtra 2011 (Ex. 1005) at **6**-7 (Appx396-397).
- Dr. Bretschneider Declaration ¶¶99, 103, 107, and **158-159** (IPR Ex. 1002 at Appx216-219, 244-245)

The only evidence ELCO cited to the Board as relevant to Claim 22 Limitation [M] are those in bold/underline above. None of the other evidence cited

[73] *See also* Appx4393-4394 (DMF argument that ELCO's expert "does not invoke or indicate any obviousness analysis or proposed modification of what he calls a 'driver' in Imtra 2011.").

by ELCO in this appeal may be considered here. Specifically, the Board's rules require the Petitioner to state "the relevance of the evidence to the challenge raised, including identifying specific portions of the evidence that support the challenge."[74] Otherwise, "[t]he Board may exclude or give no weight to the evidence where a party has failed to state its relevance or to identify specific portions of the evidence that support the challenge."[75] Yet, other than the bold/underlined evidence above, ELCO failed to cite or explain the relevance to the Board of the remaining evidence on which ELCO relies in this appeal.

For example, ELCO's appeal brief cites:

- **Dr. Bretschneider 12/20/19 Deposition (IPR Ex. 2088)**: A 345-page deposition in the parallel district court action of ELCO's expert Dr. Bretschneider about his opinion in his district court expert report (not his IPR declaration here).[76] ELCO did not cite a single word of this deposition to the Board (much less explain the relevance thereof).

- **Mr. Benya 7/7/20 Deposition (IPR Ex. 2108)**: A 225-page deposition in this IPR of DMF's expert Mr. Benya. ELCO did cite to the Board some portions of this deposition (citing the uncorrected version Ex. 1038). But ELCO did not cite to the Board for *any reason* (much less explain the relevance of) the portions ELCO cites now in its appeal brief here.

- **Chevalier Decl. 6/3/2019 (IPR Ex. 2009)**: Declaration of Imtra employee Mr. Chevalier who ELCO originally proposed as a witness.[77] ELCO did not cite to the Board a single word of this Chevalier declaration to support any

---

[74] 37 CFR §42.104(b)(5).

[75] *Id.*

[76] *See* Appx5718 (cover page), Appx5798 ("your opinion in this case").

[77] *See* Appx1928 at ¶2 (Mr. Chevalier explaining he was originally approached by ELCO's counsel in this case and that he did not say what ELCO said he did).

issue. Quite the opposite: ELCO filed a motion to exclude the declaration's ¶¶ 4-6, arguing Mr. Chevalier lacked personal knowledge and technical expertise to support that fact/opinion testimony.[78] Yet ELCO now on appeal (Blue Br. at 17) cites those same ¶¶ 4-6 as purportedly giving an opinion on "the equivalence between 120-volt power and 'building' power."[79]

- **Museum Article From Internet**. ELCO (Blue Br. at 19 n,.2) cites an Internet article that ELCO provided to DMF for the first time just a few weeks ago. This Internet article was never filed in the IPR, much less cited (nor the relevance thereof explained) by ELCO to the Board.

The place (if any) for ELCO to have raised the arguments and evidence ELCO presents here would have been to the Board, yet ELCO chose not to do so. The Board has standard operating procedures following remand from this Court that require a teleconference with the Board to discuss remand procedures, including requests for additional briefing or oral argument.[80] In the first appeal, as discussed below, ELCO admitted it had not made these new arguments to the Board in its IPR briefing. Yet, on remand when fully aware of that problem,

[78] Appx8030, 8036, 8038-8040.

[79] Based on ELCO's motion, the Board did not rely on any opinions in ¶¶4-6 on which ELCO purports to rely in this appeal. First Board Decision, 2020 WL 6811241, at *23 (The Board denied ELCO's motion to exclude with respect to Mr. Chevalier's "fact testimony regarding Imtra's products" and "dismiss[ed] it as moot to the extent that it requests exclusion of opinion testimony, as we did not rely on Mr. Chevalier's opinions in our decision.").

[80] *See Patent Trial and Appeal Board Standard Operating Procedure 9* at 5-6, 8, 13, 16 (identifying reasons for additional briefing in different remand scenarios). The foregoing Standard Operating Procedure 9 ("SOP9") was the operative procedure during the remand proceedings in this case. The Board recently replaced SOP9 with Standard Operating Procedure 3 (SOP3), which has similar teleconference and requests for additional briefing.

ELCO chose not to request additional briefing or oral argument to present the arguments to the Board.[81] As discussed, this Court sits as a court of review for errors by the Board (not a court of first instance) and ELCO waived arguments it chose not to raise to the Board before or after remand.[82]

## Conclusion

Based on the foregoing, DMF respectfully requests that the Court either **(1)** dismiss this appeal for lack of appellate jurisdiction given deficiencies in the notice of appeal or **(2)** affirm the Board's decision that ELCO failed to prove that Claim 22 was unpatentable.

Dated: December 12, 2023

/s/

David W. Long
*Attorney for Appellee*
*DMF, Inc.*

---

[81] *See* Appx3 ("The Board held a conference call with the parties on Jan. 11, 2023. Neither party requested additional briefing or a hearing.").

[82] *Google*, 980 F.3d at 864 ("The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance.").

## Certificate of Compliance

The undersigned certifies that the foregoing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface Times New Roman size 14 font and includes 8650 words as counted automatically by Microsoft Word, which is under the 14,000 word limit of Federal Rule of Appellate Procedure 32(b)(1).

Dated: December 12, 2023

/s/
David W. Long
*Attorney for Appellee*
*DMF, Inc.*

## Certificate of Service

I certify that, on the date below, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF System and served on all counsel of record via electronic mail.

Dated: December 12, 2023

/s/
David W. Long
*Attorney for Appellee*
*DMF, Inc.*