**2023-1997**

# United States Court of Appeals for the Federal Circuit

**AMP PLUS, INC., dba ELCO Lighting,**
*Appellant*

**v.**

**DMF, INC.,**
*Appellee*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-01094

## REPLY BRIEF OF APPELLANT AMP PLUS, INC., dba ELCO Lighting

Guy Ruttenberg
Bruce D. Kuyper
Ruttenberg IP Law,
A Professional Corporation
1801 Century Park East
Suite 1920
Los Angeles, CA 90067
(310) 627-2270
guy@ruttenbergiplaw.com
bruce@ruttenbergiplaw.com
*Attorneys for Appellant*

January 16, 2024

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

SUPPLEMENTAL STATEMENT OF THE CASE .......... 3

ARGUMENT .......... 4

I. This Court Has Jurisdiction. .......... 4

A. ELCO Properly and Timely Filed Its Notice of Appeal. .......... 5

B. ELCO Complied with This Court's Claims-Processing Rules .......... 7

C. ELCO Also Complied with the Director's Requirements, and DMF Lacks Standing to Argue Otherwise. .......... 8

D. DMF Relies upon and Misapplies Outdated Authorities. .......... 9

II. ELCO Has Not Raised a "New" Anticipation Argument. .......... 11

III. Claim 22 Is Obvious and Anticipated in Light of Imtra 2011 and Imtra 2007. .......... 13

A. Coupling a Prior Art Device "to a Building" Is Not Patentable. .......... 14

B. ELCO Properly Established Before the Board That Imtra 2011 Discloses All Limitation of Claim 22, Including Limitation M. .......... 14

C. ELCO's Obviousness Arguments Are Not "New." .......... 17

D. The Board's Finding Is Unsupported. .......... 20

E. The Board Suggested No Disagreement with This Court's Observation That Imtra 2011 Discloses All Limitations. .......... 21

IV. DMF's Remaining Arguments Are Without Merit. ............................23

A. DMF Improperly Tries to Import New Limitations and Reargue "Mixing and Matching." ..........................................................23

B. DMF Improperly Relies on "Plurality of Elements" and "Junction Box" Limitations That Are Not Part of Claim 22. ...24

C. DMF Tries to Avoid the Imtra 2011 Reference by Characterizing It As a "Boat Light." .......................................25

CONCLUSION ..........................................................................................26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS...27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMP Plus, Inc. v. DMF, Inc.*,
No. IPR2019-01094, 2020 WL 6811241
(P.T.A.B. Nov. 19, 2020) ("*AMP Plus I*") ................................ 13, 19, 24, 25

*AMP Plus, Inc. v. DMF, Inc.*,
Nos. 2021-1595, 2021-1636, 2022 WL 16844516
(Fed. Cir. Nov. 10, 2022) ("*AMP Plus II*") .................... 12, 13, 19, 21, 23, 24

*Axonics, Inc. v. Medtronic, Inc.*,
73 F.4th 950 (Fed. Cir. 2023) ....................................................................6

*Bowles v. Russell*,
551 U.S. 205 (2007)....................................................................................5

*Cellwitch Inc. v. Tile, Inc.*,
No. 19-CV-01315-JSW,
2023 WL 8813524 (N.D. Cal. Dec. 20, 2023) ............................................12

*Hamer v. Neighborhood Housing Services of Chicago*,
583 U.S. 17 (2017)......................................................................................5

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ............................................................ 11, 12

*In re Google Technology Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ..................................................................20

*In re Gruschwitz*,
320 F.2d 401 (C.C.P.A. 1963)................................................................4, 10

*In re IPR Licensing, Inc.*,
942 F.3d 1363 (Fed. Cir. 2019) ...........................................................5, 10

*In re McDaniel*,
293 F.3d 1379 (Fed. Cir. 2002) ................................................................13

*In re Timmerbeil*,
320 F.2d 413 (C.C.P.A. 1963)................................................................4, 11

*In re Wesselman*,
127 F.2d 311 (C.C.P.A. 1942)....................................................................4

*Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. United Screw & Bolt Corp.*,
941 F.2d 466 (6th Cir. 1991) .......... 8

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
454 U. S. 464, 472 (1982) .......... 9

**Statutes**

28 U.S.C. § 1295(a)(4) (2012) .......... 6

35 U.S.C. § 141(c) (2012) .......... 6

35 U.S.C. § 142 .......... 4, 7, 11, 12

35 U.S.C. § 144 .......... 11, 12

35 U.S.C. § 312(a)(3) .......... 13

35 U.S.C. § 315 .......... 15

**Rules**

Fed. Cir. R. 1(a)(2)(A) .......... 9

Fed. Cir. R. 27(f) .......... 5

Fed. R. App. P. 15(a)(1) .......... 8

Fed. R. App. P. 15(a)(2) .......... 8, 9

Fed. R. App. P. 15(a)(3) .......... 9

**Regulations**

37 C.F.R. § 104.2(a) .......... 3

37 C.F.R. § 42.6(e) .......... 3, 5

37 C.F.R. § 90.2(a)(1) .......... 10

37 C.F.R. § 90.2(a)(3)(ii) .......... 5, 7, 9, 10, 12

37 C.F.R. § 90.3 (2012) .......... 7

**Other Authorities**

Federal Circuit Rules of Practice .......... 9

## INTRODUCTION

This Court already affirmed the Board's determination that claim 17 is unpatentable. The only asserted difference between claim 17 and claim 22 is that claim 22 places the unpatentable "compact recessed lighting system" of claim 17 in a building. The placement of a light in a building is not a patentable distinction. Because it cannot effectively oppose the substantive merits of ELCO's argument, DMF devotes the majority of its brief to specious procedural arguments. Those procedural arguments are without merit.

First, there is no basis for challenging this Court's jurisdiction over the pending appeal. ELCO's notice of appeal used this Court's Form 5, which meets the requirements of section 142 of Title 35 and Rule 15 of the Federal Rules of Appellate Procedure. The Director has not attempted to impose additional requirements on this Court's jurisdiction, nor would the Director have authority to do so. Per Supreme Court precedent, only Congress can set requirements for this Court's jurisdiction. In any event, ELCO complied with the applicable rules of the Patent Office, as well.

Second, DMF's assertion that ELCO has made new arguments in its brief is also incorrect. Contrary to DMF's assertion, ELCO's argument remains unchanged from its petition and ELCO presented substantial evidence of claim 22's unpatentability to the Board.

Third, as ELCO shows in its opening brief, ELCO demonstrated to the Board in its petition (and through the IPR proceedings) that the Imtra 2011 reference discloses use of a "compact recessed lighting system" with the voltage used in a building. Indeed, not only did ELCO establish this element, but DMF and DMF's witnesses acknowledged the point repeatedly during the IPR proceedings. The Board's determination on remand that ELCO failed to direct the Board to sufficient evidence of claim 22's unpatentability is not supported by substantial evidence. DMF's response brief ignores ELCO's showing and devotes a mere three paragraphs to a mischaracterization of ELCO's petition. In doing so, DMF tacitly concedes the merit of ELCO's demonstration of claim 22's unpatentability. Tellingly, DMF never points to any contrary evidence in the record. DMF also fails to refute the fundamental point that placing a prior art system "in a building" is not a patentable distinction.

Fourth, DMF's remaining arguments improperly try to import extraneous limitations into claim 22, and DMF otherwise reargues points that were adjudicated in the prior appeal. For example, DMF places great emphasis on the "plurality of elements" limitation, even though (as this Court previously confirmed) that limitation is absent from claim 22. DMF's arguments are without merit.

Accordingly, ELCO respectfully requests that this Court reverse the Board's incorrect determination that ELCO failed to direct it to sufficient evidence of unpatentability and determine that claim 22 is unpatentable.

## SUPPLEMENTAL STATEMENT OF THE CASE

ELCO submits the following supplemental facts in response to DMF's arguments in its response brief that ELCO's use of this Court's Form 5 for its Notice of Appeal was insufficient for the Court to have jurisdiction over this appeal. DMF never raised this issue by motion.

ELCO timely filed its Notice of Appeal on May 30, 2023, using this Court's Form 5. Appx9065-9066. ELCO served a copy upon the Director at the address that the Director specifies in 37 C.F.R. § 104.2(a). Appx9066.

On June 8, 2023, the Solicitor's Office of the Patent and Trademark Office wrote to ELCO's counsel to "request that [ELCO] file a corrected notice with the Board and serve the same on the PTO and opposing counsel pursuant to Rule 42.6(e)." Appx9070. The Solicitor's Office requested that ELCO "identify[] the issues [ELCO] intends to raise on appeal." *Id.*

In response, ELCO filed a Corrected Notice of Appeal in the IPR on June 28, 2023. Appx9067-9069. On June 29, 2023, the Solicitor's Office informed ELCO's counsel that "[t]he corrected notice provides us the information we need to make our decision." Appx9071. The Solicitor's Office did not respond to

ELCO's counsel's statement that he had "found [notices of appeal] in several related IPRs identified in a recently published Federal Circuit opinion that did not specify any issues and had not been corrected." Appx9071.

## ARGUMENT

### I. This Court Has Jurisdiction.

DMF argues that this Court lack jurisdiction, citing three cases decided by the Court of Customs and Patent Appeals ("CCPA") in the 1940s and 1960s.[1] DMF contends that the appeals in those cases were dismissed "on jurisdictional grounds" based on a "fail[ure] to provide sufficient notice under [35 U.S.C.] §142 of the reasons for appeal." Resp. Br. at 22. DMF concedes that section 142 was later amended in 1984 to remove requirement. *Id.* at 23-24. But DMF insists later statutory changes "again required that, in specific circumstances, the notice of appeal must again serve the *informative function* that gives the Director notice of issues to be raised in an appeal." *Id.* at 24. Specifically, DMF argues that—under the AIA—the Director has the right to intervene in an appeal from an IPR, and that such a "right is meaningless if the Patent Office cannot make a timely, informed decision whether to intervene." *Id.* DMF also points to the Patent Office rules embodied in 37 C.F.R. § 90.2(a)(3)(ii), which provides that "notice of the appeal

[1] DMF specifically cites *In re Gruschwitz*, 320 F.2d 401 (C.C.P.A. 1963); *In re Timmerbeil*, 320 F.2d 413 (C.C.P.A. 1963); and *In re Wesselman*, 127 F.2d 311 (C.C.P.A. 1942).

must provide sufficient information to allow the Director to determine whether to exercise the right to intervene in the appeal pursuant to 35 U.S.C. 143, and it must be served as provided in § 42.6(e) of this title." DMF argues that absent a detailed "notice of appeal," this Court lacks jurisdiction. DMF's arguments are wrong.

### A. ELCO Properly and Timely Filed Its Notice of Appeal.[2]

As DMF concedes (Resp. Br. at 26-27), ELCO filed its notice of appeal within 63 days of the Board's decision. Therefore, this Court has jurisdiction. The Patent Office has no authority to impose additional jurisdictional requirements, nor has the Patent Office attempted to do so.

"Only Congress may determine a lower federal court's subject-matter jurisdiction." *Hamer v. Neighborhood Housing Services of Chicago*, 583 U.S. 17, 19 (2017)) (internal quotations omitted). Congress decides (within constitutional bounds) "what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Thus, Congress "can also determine when, and under what conditions, federal courts can hear them." *Id.* at 213. As this Court has previously explained, even "court-promulgated rules" are not "jurisdictional." *In re IPR Licensing, Inc.*, 942 F.3d 1363, 1371 (Fed. Cir. 2019).

[2] ELCO notes that DMF has not filed a motion to dismiss for lack of jurisdiction. *See* Fed. Cir. R. 27(f) ("A motion to dismiss for lack of jurisdiction . . . should be made as soon as the grounds for the motion are known.")

In the case of IPRs, Congress has provided that a "dissatisfied" party may appeal the Board's decision to this Court. 35 U.S.C. § 141(c) (2012). This Court has exclusive jurisdiction over such appeals. 28 U.S.C. § 1295(a)(4) (2012). Title 35, section 142 specifies the requirements for taking an appeal to this Court by filing a "written notice of appeal":

> When an appeal is taken to the United States Court of Appeals for the Federal Circuit, the appellant shall file in the Patent and Trademark Office a written notice of appeal directed to the Director, within such time after the date of the decision from which the appeal is taken as the Director prescribes, but in no case less than 60 days after that date.

35 U.S.C. § 142 (2002). The Director has prescribed that the "notice of appeal" must be filed "no later than sixty-three (63) days after the date of the final Board decision."[3] 37 C.F.R. § 90.3 (2012). Congress has not specified any other requirements for invoking this Court's jurisdiction over such an appeal. Thus, this Court has previously observed that it has jurisdiction over appeals taken within 63 days of the Board's decision. *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 956 (Fed. Cir. 2023) ("Axonics timely appealed . . . within the 63 days allowed").

DMF's reliance on 37 C.F.R. § 90.2(a)(3)(ii) is misplaced. Most importantly, DMF cites no authority suggesting that the requirement of section 90.2(a)(3)(ii) is ***jurisdictional***. Essentially, DMF suggests that the phrase "as the

[3] There is no dispute that ELCO filed its Notice of Appeal within the 63-day period specified by the Director and, therefore, ELCO assumes that the 63-day deadline is jurisdictional.

Director prescribes" in section 142 authorizes the Director to specify the ***contents*** of the notice of appeal. Resp. Br. at 28 & n.62. But a plain reading of the statute reveals otherwise: the Director only has authority to set the deadline of the appeal at least 60 days "after the date of the decision from which the appeal is taken." The Director does not have—and does not purport to have—authority to prescribe the contents of the notice of appeal. Further, even if the Director has such authority (which is not the case), the Director's requirements would not impact this Court's jurisdiction.

**B. ELCO Complied with This Court's Claims-Processing Rules.**

While court-imposed rules are not jurisdictional, such rules are "properly treated as a claim-processing rule," which promote "the orderly progress of litigation." *In re IPR Licensing*, 942 F.3d at 1371 (internal quotations omitted). Here, too, DMF concedes that ELCO complied with this Court's claims-processing rulings.

Rule 15(a)(1) of the Federal Rules of Appellate Procedure explains that this Court's review of an "agency order" is commenced by filing a petition for review. Rule 15(a)(2) specifies three requirements for the contents of the petition, namely (A) the name of the party seeking review; (B) the name of the agency; and (C) specify the order or part thereof to be reviewed. Further, this Court's rules confirm that the term "agency" includes "the Patent Trial and Appeal Board." Fed. Cir. R.

1(a)(2)(A). In the context of a petition for review of an agency order, this Court's rules further specify that Form 5 is "available for a petition for review to this court." Fed. Cir. Rules of Practice at 39 n.† (footnote to Fed. R. App. P. 15(a)(3)).

DMF concedes that ELCO used this Court's Form 5. DMF does not dispute that the Form 5 submitted by ELCO meets all three requirements set forth in Rule 15(a)(2). Not only does this Court have jurisdiction, but ELCO also followed the appropriate "claim-processing" rules.[4]

### C. ELCO Also Complied with the Director's Requirements, and DMF Lacks Standing to Argue Otherwise.

In any event—and contrary to DMF's suggestion—37 C.F.R. 90.2(a)(3)(ii) does not prescribe the contents of "***the*** notice of appeal." Rather, it simply requires that "notice of the appeal" must include "sufficient information to allow the Director to determine whether to exercise the right to intervene." The regulation does not require any level of specificity. It does not even require that such

[4] DMF's citation to *Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. United Screw & Bolt Corp.*, 941 F.2d 466, 470 (6th Cir. 1991) is unhelpful to DMF. In that case, a prior version of a Form 1 Notice of Appeal recommended by Rule 3 of the Federal Rules of Appellate Procedure was deemed "sufficient" for an appeal involving 2 parties and found the challenged use of the form for multiple parties did not preclude jurisdiction over omitted appellees. *Id.* at 472.

information be set forth in "***the*** notice of appeal."[5] Nor does the regulation specify any particular deadline for providing this information.

Ultimately, if the Director believes that the information provided was insufficient, the Director can request more information—which happened here. Once ELCO provided additional information, the Director was apparently satisfied with ELCO's responses, as it did not request further information. Appx9071. DMF cites no authority suggesting that it has standing to assert any purported deficiencies on behalf of the Director. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 472 (1982) (standing requires that a party "'personally has suffered some actual or threatened injury'"). In any event, none of this impacts the Court's jurisdiction.

**D. DMF Relies upon and Misapplies Outdated Authorities.**

DMF's analysis largely relies upon decades-old CCPA cases that are premised on an outdated statutory framework. These authorities also have nothing to do with an appeal from an IPR.

DMF acknowledges that these CCPA cases rely upon an outdated version of section 142. But the decisions are also premised upon an outdated version of 35 U.S.C. ***§ 144***—which DMF does not discuss. At the time, section 142 required that

[5] Subsection (a)(1) of § 90.2 twice discusses "***the*** notice of appeal." In contrast, subsection (a)(3)(ii) refers to "notice of the appeal."

when an appeal is taken, "the appellant . . . shall file in the Patent Office his reasons of appeal, specifically set forth in writing, within such time after the date of the decision appealed from, not less than sixty days, as the Commissioner appoints." *Gruschwitz*, 320 F.2d at 403 (quoting the then-current version of 35 U.S.C. § 142). Critically, under section 144, the decision on appeal was (at the time) "***confined*** to the points set forth in the reasons of appeal." *Id.* (quoting the then-current version of 35 U.S.C. § 144) (emphasis added). Thus, the court in *Gruschwitz* held that it lacks "authority" to hear an appeal beyond the reasons set forth in the notice to the Patent Office.[6]

As DMF concedes, Section 142 no longer requires (much less sets a deadline for) the applicant to specifically set forth in writing the applicant's "reasons of appeal." DMF argues that 37 C.F.R. § 90.2(a)(3)(ii) now imposes the same requirement. Even if that were correct (which it is not), DMF overlooks a critical point: The current version of Section 144 no longer limits this Court's review to "the points set forth in the reasons of appeal." Absent some statutory basis, these rules do not impact the Court's jurisdiction. *In re IPR Licensing*, 942 F.3d at 1371.

---

[6] Even this much was controversial. *See Gruschwitz*, 320 F.2d at 405 (Rich, J. dissenting) ("a new technical 'majority' (again three to [two] but agreeing only on result) is making an about-face for the court and retreating into the barren world of useless legal technicalities from which we were so hopefully emerging"); *see also Timmerbeil*, 320 F.2d at 414 (dissents from both Judges Rich and Smith and a concurring opinion by Judge Martin).

Finally, contrary to DMF's suggestion, the requirements of 37 C.F.R. § 90.2(a)(3)(ii) are not the same as the former requirements under section 142. Unlike the old version of section 142, the current regulation does not require "reasons of appeal" that must be "specifically set forth in writing" within a time period specified by the Commissioner.[7]

In short, this Court has jurisdiction.

## II. ELCO Has Not Raised a "New" Anticipation Argument.

Contrary to DMF's arguments, ELCO advances the same arguments here as it did in its petition and throughout the IPR proceedings before Board. Citing 35 U.S.C. § 312(a)(3) and this Court's *Henny Penny*[8] decision, DMF points out that the IPR is limited to the "grounds" specified in ELCO's IPR petition. Resp. Br. at 29-30. DMF also argues that ELCO did not challenge claim 22 as part of its Ground 1 (anticipation based on the Imtra 2011) and, instead, only challenged claim 22 under Grounds 2 and 3. DMF does not (and cannot), however, dispute that the substance of ELCO's argument is the same.

---

[7] Even under the CCPA cases cited by DMF, the notice of appeal would still be sufficient under the facts of this case. *See Timmerbeil*, 320 F.2d at 414 (Martin, J. concurring) ("Where in one case the reasons of appeal set forth by appellant would be sufficient, the same reasons in another appeal involving a different set of facts might not be adequate."). Based on the scope of the prior remand, the instant appeal involves only one claim and only one ground for appeal. There was never any mystery as to the issues on appeal.

[8] *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330-31 (Fed. Cir. 2019).

Here, ELCO challenged claim 22 (and 17) under Grounds 2 and 3 as obvious over prior art combinations that each include Imtra 2011. Opening Br. at 14 n.1. In particular, Ground 2 is based on the Imtra 2007 and Imtra 2011 catalogues. From the outset, however, ELCO argued in its petition that Imtra 2011 discloses the structural limitations of claim 22, including the voltage used in a building. *See, e.g.*, Appx99 ("Imtra 2011 . . . discloses 120VAC LED Downlights, and, therefore, discloses a driver receiving 'main building voltage.'"). Based in part on the arguments raised by DMF (and as previously noted by this Court), "the Board found that Imtra 2011 disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation." *AMP Plus, Inc. v. DMF, Inc.*, No. 2021-1595, 2022 WL 16844516, at *2 (Fed. Cir. Nov. 10, 2022) ("*AMP Plus II*"). Unlike the petitioner in *Henny Penny*,[9] ELCO has not tried to rely on new prior art to satisfy a particular limitation. ELCO's arguments have not changed.[10]

---

[9] *Cf. Henny Penny*, 938 F.3d at 1331 (the petition says nothing about using Kauffman's measured electrical parameters to calculate TPM levels").

[10] Although DMF focuses on the term "ground," DMF offers no discussion (much less authority) explaining how that term is used in the statute. District courts "across the country" have construed the term "ground" as used in another section of the AIA (namely, section 315) to mean "the specific piece of prior art or combination of prior art that a petitioner raised, to challenge the validity of a patent during an IPR" *Cellwitch Inc. v. Tile, Inc.*, No. 19-CV-01315-JSW, 2023 WL 8813524, at *3 (N.D. Cal. Dec. 20, 2023). DMF cites no authority suggesting that this Court should adopt a different definition here.

DMF also ignores and does not address ELCO's authority (cited by the Board and this Court), that "anticipation is the epitome of obviousness." *See* Opening Br. at 14 n.1 (quoting *In re McDaniel*, 293 F.3d 1379, 1385 (Fed. Cir. 2002)); *AMP Plus, Inc. v. DMF, Inc.*, No. IPR2019-01094, 2020 WL 6811241, at *19 (P.T.A.B. Nov. 19, 2020) ("*AMP Plus I*"); *see also AMP Plus II*, 2022 WL 16844516, at *7 ("anticipation is the epitome of obviousness").

Ultimately, ELCO showed that the Imtra 2011 reference discloses all of the key elements, including the "electricity of a building." Taking a prior art device and "coupling it to a building" does not render the device patentable over the prior art. Whether that argument is called anticipation or obviousness makes little difference.

## III. Claim 22 Is Obvious and Anticipated in Light of Imtra 2011 and Imtra 2007.

On the merits, DMF fails to offer any meaningful basis for substantiating the Board's decision. Not only did ELCO affirmatively address Limitation M in its petition (and accompanying declaration), but DMF never disputed that limitation. On the contrary, DMF (and its witnesses) acknowledged that this element is disclosed. And in any event, connecting a device "to the electrical system of a building" does not render "patentable" what is otherwise disclosed by the prior art. Opening Br. at 18-20 (and cases cited therein). DMF does not refute any of these

points. Instead, DMF's arguments are premised on claim limitations that are non-existent and/or arguments that were expressly rejected by this Court (and the Board) during the initial appeal. The prior appeal already establishes that the claimed apparatus of claim 17 is obvious over (and anticipated by) the Imtra 2011 reference.

### A. Coupling a Prior Art Device "to a Building" Is Not Patentable.

Fundamentally, and as explained in the opening brief (at pp. 18-20), coupling a prior art device "to an electrical system of a building" is neither novel nor nonobvious. DMF fails to address this point.

### B. ELCO Properly Established Before the Board That Imtra 2011 Discloses All Limitation of Claim 22, Including Limitation M.

ELCO showed in its opening brief how ELCO had demonstrated to the Board in its petition that claim 22 is unpatentable as obvious, and how the Board's statement that ELCO had "fail[ed] to direct [the Board] to" sufficient evidence is not supported by substantial evidence. Opening Br. at 15-18. DMF's response to ELCO's showing is limited to three paragraphs. Resp. Br. at 32-34. Only one is substantive. *Id.* at 33-34.

As an initial matter, DMF asserts that ELCO's petition presents "only three sentences" that discuss Limitation M. Resp. Br. at 32. Even if that assertion were true (which it is not), DMF fails to explain why those "three sentences" are

insufficient, given that DMF never disputed (and affirmatively acknowledged) this limitation.

In any event, ELCO's argument was not limited to "three sentences." Although DMF never proposed any claim construction for this limitation, DMF acknowledged that 120 volts is a type of "main building voltage." Appx8465 (Hr'g Tr. at 51:8-9 (DMF's counsel admitting at the IPR hearing that "building main power is very well understood to meet these voltages, 110, ***120***, 240, 277 . . . ." (emphasis added)).). Thus, as noted above, ELCO explained elsewhere in its petition that "Imtra 2011 . . . discloses 120VAC LED Downlights, and, therefore, discloses a driver receiving 'main building voltage.'" Appx99. Further, DMF ignores the specific, direct citation to two paragraphs of ELCO's expert Dr. Bretschneider's declaration submitted with ELCO's petition: "(Bretschneider, ¶158-159)." Resp. Br. at 33; Appx244-Appx245. In his declaration accompanying the petition, Dr. Bretschneider likewise explained that Imtra 2011 teaches what DMF has described as "main building voltage":

> 158. Imtra 2011 teaches fixtures powered by 120VAC. [Exh. 1005, Imtra 2011 at p. 6-7] Imtra 2011 also teaches inclusion off an 18awg triplex cable tail for direct hook-up to an AC junction box. [Exh. 1005, Imtra 2011 at p. 6] A POSITA would understand that a triplex cable contains three wires: the so-called "hot" and "neutral" which carry the 120VAC and are insulated as well as a third "ground" wire which may or may not be insulated.

Appx244.

DMF's assertion also selectively ignores the discussion in the petition about how the '266 patent ***itself*** discusses 120 volts as a type of "electrical system of the building or structure in which the recessed lighting system 1 is installed":

> "The driver 4 receives an input current from the electrical system of the building or structure in which the recessed lighting system 1 is installed and drops the voltage of the input current to an acceptable level for the light source module 3 (e.g., from 120V-240V to 36V-48V)."
>
> ('266 Patent at 4:36-43)

Appx94 (Petition at 24). DMF also selectively ignores the same quotation in the "Technical Background" section of Dr. Bretschneider's declaration supporting the petition:

> "The junction box **2** may receive electrical wires **9A** from an electrical system (e.g., 120 VAC or 277 VAC) within a building *or structure* in which the recessed lighting system 1 is installed. The electrical wires 9A from the *structure* may be connected to corresponding wires **9B** of the unified casting **5**, as will be described in greater detail below." ['266 patent at 33-39 (emphasis added)]

Appx180 (Ex. 1002, Bretschneider Decl. ¶ 27). Thus, the petition and Dr. Bretschneider's declaration pointed out to the Board that Imtra 2011's pages 6-7 disclose the use of the device of claim 22 in a building by the reference to 120 volts.

Indeed, even DMF's own counsel admitted at the IPR hearing that "building main power is very well understood to meet these voltages, 110, ***120***, 240, 277 . . . ." Appx8465 (Hr'g Tr. at 51:8-9) (emphasis added).

### C. ELCO's Obviousness Arguments Are Not "New."

DMF also quibbles about the specific paragraphs and pages cited in ELCO's petition. DMF is incorrect.

For example, DMF alleges that ELCO's petition only cited page 6 of Imtra 2011, which somehow forecloses the ability to rely on page 7. Resp. Br. at 33. But as DMF admits, ELCO's petition (when discuss claim 22's Limitation M) cites paragraph 158 of Dr. Bretschneider's declaration, which in turn cites pages 6-7 of the Imtra 2011 reference. Appx244.

DMF next alleges that ELCO's petition only cited paragraphs 158-59 of Dr. Bretschneider's declaration, and not paragraphs 99, 103, and 107 regarding claim 22's Limitation M. DMF is incorrect again. When discussing DMF's attempt to limit the construction of "driver" to require an input of "building main voltage," ELCO's petition cited to paragraph 99 of Dr. Bretschneider's declaration: "Neither of these industry definitions requires the use of, or is limited to, 'building main voltage.' (Bretschneider, ¶¶90-101)." Appx95 (Petition at 25). This again directly relates to claim 22's building limitation. ELCO also cited paragraphs 103 and 107 in its petition, when first discussing Imtra 2011's disclosure of claim 22's common limitations with claim 17 and other claims, again when directly discussing installation within a building: "Marine light applications are relevant to the field of lighting as described by the '266 Patent, namely applications 'within a building or

structure in which the recessed lighting system is installed.' ('266 Patent, 2:35-36) (Bretschneider, ¶¶102-108)." Appx98 (Petition at 28).

DMF's further complaint seems to be that ELCO's opening brief additionally cites some evidence not available at the time of ELCO's petition, principally the testimony of witnesses in the IPR proceeding. That evidence that was developed during the IPR proceeding is merely further corroborating evidence that Limitation M is obvious. It is not new ***argument***. The argument remains the same as in the petition: ***120 volts is the power of a building***—including per the '266 patent itself—so Limitation M is in the prior art, along with all other claim 22 limitations, as determined by the Board and affirmed by this Court in holding claim 17 unpatentable.

In its opening brief, ELCO also pointed to such evidence to illustrate the substance of Limitation M was undisputed and even acknowledged by DMF and its own witnesses, not as new "evidence" to support that point. Indeed, as shown in ELCO's opening brief, that point was already established in the record to the Board.

One of those DMF witnesses not disputing the point was DMF's own expert, Mr. Benya. DMF admits that ELCO cited to his deposition in the IPR. Resp. Br. at 35. In fact, ELCO cited Mr. Benya's deposition to the Board on more than one occasion for the relevant point that Imtra 2011 discloses 120-volt power and the

very feature that the petition describes for Limitation M. *See* Appx6909 (Petitioner's Reply at 10 ("The Petition discusses the Sardinia product having 'integrated AC to DC drive electronics' that 'connect directly to your 120VAC power supply' and 'an 18 awg Triplex cable tail for direct hook-up to an AC J-Box.'")); Appx8282 (slide 22 of Petitioner's demonstrative exhibit); Appx8431 (Hr'g Tr. at 17:15-20).

Another of DMF's witnesses was Mr. Chevalier. Resp. Br. at 35. DMF even admits that the Board "consider[ed] Mr. Chevalier to be qualified to provide fact testimony regarding Imtra's products," specifically paragraphs 4-6 of his declaration. *AMP Plus I*, 2020 WL 6811241, at *23. That ELCO tried to exclude the declaration is of no import because it was not excluded and the Board explicitly considered it, even if it didn't rely upon it. *Id.* More importantly, ELCO has cited Mr. Chevalier's testimony to confirm DMF's concurrence (through its own witnesses) that "120-volt power" would be understood as "building power."

Lastly, DMF incorrectly argues—without support—that "[i]n the first appeal, as discussed below, ELCO admitted it had not made these new arguments to the Board in its IPR briefing." Resp. Br. at 36. Of course, ELCO made no such admission. *See AMP Plus II*, 2022 WL 16844516, at *3 ("ELCO argues that the Board erred in failing to find that Claim 22 was unpatentable as obvious."). The arguments are not new.

Because this is not a "new" argument, DMF's citation to *In re Google Technology Holdings LLC*, 980 F.3d 858, 864 (Fed. Cir. 2020), is inapposite. There, this Court held that new ***arguments*** on appeal were forfeited where the applicant "never presented th[o]se ***arguments*** to the Board." *Id.* at 863 (emphasis added). Here, ELCO is presenting the ***same*** Ground 2 argument that it first presented in its petition, not a ***new*** argument. ELCO has not forfeited its timely made argument.

**D. The Board's Finding Is Unsupported.**

As noted above, the Board overlooked evidence that was not only cited by ELCO but also unrefuted (and largely conceded by DMF and its witnesses). In response, DMF asserts that the petitioner "does not carry its burden by arguing only favorable evidence while ignoring unfavorable evidence underlying the PTAB's decision." Resp. Br. at 19. But the Board did not point to any "unfavorable evidence." Even in its briefing before this Court, DMF does not point to any "unfavorable evidence."

The Board's sole factual finding for determining claim 22 not unpatentable was the incorrect finding that ELCO "provide[d] no analysis" or "fail[s] to address" the building limitation. Appx7 ("Petitioner provides no analysis of the portion of Limitation [M] that recites 'coupl[ing] to electricity from an electrical system of a building in which the compact recessed lighting system is installed.'");

Appx8-Appx9 ("The portions of Imtra 2011 and Dr. Bretschneider's Declaration Petitioner relies on fail to address installation of Imtra 2011's marine lighting system in a building."). The citation for the latter quote even omits any citation to paragraphs 158 or 159 of Dr. Bretschneider's declaration, which the petition specifically cited for the building limitation. Thus, this finding is simply unsupported. On the contrary, it is contradicted by the substantial evidence that ELCO provided in its petition and the cited portions of Dr. Bretschneider's declaration.

The Board's statement that ELCO "side-stepped confronting the 'installation in a building' issue" is also unsupported. Appx8. The petition and the cited paragraphs of Dr. Bretschneider's declaration detail Imtra 2011's disclosure of the prior art devices covered by claim 17 with the voltage of a building.

### E. The Board Suggested No Disagreement with This Court's Observation That Imtra 2011 Discloses All Limitations.

As explained, this Court previously observed that "the Board found that Imtra 2011 disclosed all limitations of the challenged claims except for the 'plurality of elements' limitation." *AMP Plus II*, 2022 WL 16844516, at *2. Thus, "it appear[ed] that the Board may have simply overlooked [claim 22] when determining whether the challenged claims were obvious in view of Grounds 2 and 3." *Id.* at 3. On remand, the Board never suggested that it disagrees with this

characterization. Nor did the Board offer any reason to depart from this prior finding.

While the Board points out that "[n]either party requested additional briefing or a hearing" on a January 11, 2023 conference call, the Board also did not invite any further briefing or hearing. As shown by the Certified List, there is no record—let alone a transcript—of the post-remand conference call, which was short and without any opportunity to request further briefing. Appx14. DMF's contention that "ELCO had the opportunity to request additional briefing or oral argument" (Resp. Br. at 16) is likewise unsupported by the record. Indeed, nothing in the record suggests that the Board signaled any need for additional briefing.

DMF also dismisses as "absurd" ELCO's argument that it is law of the case that Imtra 2011 discloses all limitations of the challenged claims that do not recite the "plurality of elements" limitation. Resp. Br. at 30. DMF dismisses this Court's statement as just "background," even though it describes what the Board "found." DMF also contends that "ELCO should have promptly raised that argument with the Board at the outset of the remand process." *Id.* Again, the Board invited no such argument. But more fundamentally, the point was already raised in this Court's decision remanding the case back to the Board, and the Board did not take issue with it on remand.

In any event, there is no real dispute that the Imtra 2011 reference discloses all of the challenged claims, except the plurality of elements. "Claim 22, however, does not recite that limitation." *AMP Plus II*, 2022 WL 16844516, at *3. Claim 22 is invalid over the Imtra 2011 reference.

## IV. DMF's Remaining Arguments Are Without Merit.

For its remaining arguments, DMF tries to reargue issues that were expressly decided in the prior appeal. DMF's arguments are also premised on limitations that are not part of claim 22. These arguments should be rejected.

### A. DMF Improperly Tries to Import New Limitations and Reargue "Mixing and Matching."

DMF's only substantive response to ELCO's showing is to assert that the evidence in ELCO's petition for Limitation M "say[s] nothing about modifying the driver in the small low-voltage DC product to receive high-voltage 120 VAC like the large Sardinia/Cyprus boat lights relied on by ELCO in its three sentence argument about this limitation" in the petition. Resp. Br. at 33-34. DMF's argument is irrelevant because no such "modification" need be shown.

As an initial matter, claim 22 does not require any particular "voltage." While (as discussed above) DMF acknowledged that 120 VAC was ***sufficient*** to show claim 22's limitation M reciting "the electrical system of a building," the claim does not ***require*** any particular type voltage, or even AC power. DMF did

not propose any construction for Limitation M, nor did the Board suggest any construction was necessary. As previously noted, even DMF's expert (Mr. Benya) agreed that "an electrical system of a building can be DC. Appx7773.

In any event, the Sardinia/Cyprus references (having 120 VAC) are also part of the same Imtra 2011 reference. *See AMP Plus II*, 2022 WL 16844516, at *5 ("The Imtra 2011 catalog discloses several different lighting products, including the "Sardinia," "Cyprus," "Ventura," "Portland," and "Hatteras" product lines."). Indeed, DMF ignores this Court's ***rejection*** of its argument (in the first appeal) that ELCO impermissibly "mixed and matched" disclosures from Imtra 2011:

> ELCO did not impermissibly mix and match disclosures from Imtra 2011 to arrive at an anticipatory reference. And the Board did not err in finding that there was no reason that "the general disclosures regarding Imtra LEDs" should be "limited to the specific products on the same page."

*Id.* at *5 (quoting *AMP Plus I*, 2020 WL 6811241, at *13). Thus, ELCO's showing in its petition that Imtra 2011 discloses building voltage on a different page from the other elements of claim 22 was entirely appropriate. ELCO did not need to show any "modification."

### B. DMF Improperly Relies on "Plurality of Elements" and "Junction Box" Limitations That Are Not Part of Claim 22.

Throughout its briefing, DMF emphasizes that "the patented invention provides for a compact structure that . . . has the flexibility to fit into a standard

junction box." Resp. Br. at 6; *see also id.* at 7 (emphasizing the "safety requirement to use a junction box in order to couple to the high-voltage 120 VAC electrical system of a building"); *id.* (emphasizing that the "*plurality of elements*"); *id.* at 11-12 (discussing the construction of "standard junction box"). Indeed, by suggesting that claim 22 requires a specific "high-voltage" driver (which is incorrect, as discussed above), DMF tries to incorporate the "junction box" and "plurality of elements" limitation into claim 22.

DMF's arguments are irrelevant. To be sure, claim 1 (and many other claims) of the '266 Patent recites a "unified casting includ[ing] a *plurality of elements* positioned proximate to the open front face so as to align with corresponding tabs of a *standard junction box*." Appx165 (emphasis added). But as this Court previously observed on the first appeal, "Claim 22, however, does not recite that limitation." *AMP Plus II*, 2022 WL 16844516, at *2.

### C. DMF Tries to Avoid the Imtra 2011 Reference by Characterizing It As a "Boat Light."

Finally, DMF tries to denigrate the Imtra 2011 reference by calling it a "boat light." Resp. Br. at 2. The Board, however, rejected DMF's attempt to "limit the art to recessed lighting in residential and commercial buildings." *AMP Plus I*, 2020 WL 6811241, at *4. Rather, the Board found "that the art involved in the '266 patent is recessed lighting." *Id.* Based on the Board's finding, there can be no

dispute that Imtra 2011 discloses recessed lighting and would be known to a person of ordinary skill in the art.

## CONCLUSION

For the foregoing reasons, the Board's determination should be reversed, and the Board should be directed to enter a judgment that claim 22 is unpatentable.

Date: January 16, 2024

Respectfully submitted,

Ruttenberg IP Law,
A Professional Corporation

*/s/ Guy Ruttenberg*
Guy Ruttenberg
Bruce D. Kuyper

*Attorneys for Appellant*
*AMP Plus, Inc.*

**CERTIFICATE OF COMPLIANCE**

**WITH TYPE-VOLUME LIMITATIONS**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 6072 words.

Date: January 16, 2024

*/s/ Guy Ruttenberg*
Guy Ruttenberg